**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Monica Lynette DENT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 3, 2003.

Filed Nov. 25, 2003.

---

Candace Cain, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before: TODD, GRACI, and KELLY, JJ.

KELLY, J.

¶1 Appellant, Monica Lynette Dent, asks us to determine whether the evidence admitted at trial was sufficient to sustain her conviction for retail theft. Appellant also claims the court erred in allowing the investigating police officer to testify at trial regarding statements made by Appellant's sister to the police officer during the course of the officer's investigation, where Appellant's sister did not testify at Appellant's trial. Specifically, Appellant contends her sister's statements were inadmissible hearsay and erroneously admitted under the guise of the police officer's "course of investigation." Finally, Appellant questions the trial court's decision to allow testimony concerning a surveillance videotape, where the videotape itself was not produced or available at trial. We hold that the totality of the evidence admitted at trial was sufficient to sustain Appellant's conviction for retail theft. Further, the police officer's testimony that he had obtained a photograph of Appellant based upon a conversation in which Appellant's sister identified Appellant by name as the person fleeing the scene of the crime constituted inadmissible hearsay. Nevertheless, Appellant is not entitled to a new trial on this basis. Finally, we reject Appellant's challenges to the admissibility of the testimony concerning the surveillance videotape that was "unavailable" at trial. Accordingly, we affirm Appellant's judgment of sentence.

¶2 The relevant facts and procedural history of this case are set forth in the trial court's opinion as follows:

[Appellant] was charged with one count of Retail Theft, 18 Pa.C.S. § 3929(a)(1) & (b)(1)(ii); and one count of Disorderly Conduct, 18 Pa.C.S. § 5503(a)(1), (2), (3) & (4).

* * *

## FACTS

James Conrad, manager of Pharmor at Robinson Town Center, testified that on July 17, 2001, [Appellant] tripped the electronic article surveillance alarm at the front of his store. Mr. Conrad approached [Appellant] and explained that the alarm went off, and asked her if there was anything she forgot to purchase. He then asked to look in her purse, and [Appellant] obliged. Two sets of fingernails were found, only one set was still in its original packaging. The alarm code sticker that set off the alarm was contained inside the packaging. At one point during the encounter, [Appellant] asked Mr. Conrad to page her sister from the store. However, he was reluctant to page her to the front of the store because he did not want to deal with two individuals at that time. Mr. Conrad then announced that he would have to call the police as this was a shoplifting incident, whereupon [Appellant] ran out the door and drove off in a white car.

After [Appellant] fled the store, Mr. Conrad reviewed the store's security camera images of [Appellant] and her sister. He also directed an employee to search the store, and the discarded wrapper for [one set of] the fake nails [was] found. The wrapper matched the nails found in [Appellant's] purse.

The Commonwealth next introduced the testimony of Officer Frank J. Marko of the Robinson Township Police Department. Officer Marko was called to the store at 1:12 p.m., and upon his arrival, he spoke with Mr. [Conrad]. Based on this conversation, he spoke with a [woman] whom he believed to be [Appellant's] sister. The woman identified the suspect who fled in the white car as [Appellant]. Officer Marko then obtained a photo of [Appellant] from B.C.I. He then reviewed the store security tape, and determined that the photo of [Appellant] matched the store tape, and was in fact the defendant present in the courtroom.

(Trial Court Opinion, dated November 7, 2002, at 1–2). To this rendition, we add the following facts established at trial. Mr. Conrad positively identified Appellant in court, based upon his confrontation with her at the store. He was unable to produce the videotape at trial because the store surveillance system was computerized and recycled itself automatically. Although still pictures could conceivably have been preserved, Mr. Conrad testified that the computer system had failed soon after the incident and the hard drive had to be completely replaced. He stated that Appellant had fled the store before he could check for a sales receipt for the nails.

¶ 3 The surveillance videotape was not offered as evidence. Initially, the trial court barred all testimony relating to the videotape. Following the prosecution's explanation, however, the court subsequently allowed some testimony concerning the videotape, over defense counsel's objection.

¶ 4 Following Appellant's bench trial on June 27–28, 2002, the court found her guilty of retail theft, graded as a second degree misdemeanor, and acquitted her of disorderly conduct. On July 17, 2002, the court sentenced Appellant to one year of probation, **immediately effective**[1] and concurrent with a sentence Appellant was already serving on an unrelated conviction, plus twenty-one dollars in restitution. This appeal followed.

¶ 5 On appeal, Appellant raises the following issues for our review:

---

1. This fact is relevant to Appellant's third     issue.

DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE THAT [APPELLANT] POSSESSED THE ITEMS REPORTEDLY TAKEN FROM THE PHARMOR TO SUPPORT THE CONVICTION FOR RECEIPT OF STOLEN PROPERTY?

DID THE TRIAL COURT ERR BY ADMITTING TESTIMONY CONCERNING THE STATEMENTS OF [APPELLANT'S] SISTER AND NOT DETERMINING THEY WERE INADMISSIBLE HEARSAY?

DID THE TRIAL COURT ERR BY ADMITTING TESTIMONY CONCERNING THE PHARMOR SURVEILLANCE CAMERA VIDEOTAPES DESPITE LACK OF PRODUCTION AT TRIAL AND DURING DISCOVERY?

(Appellant's Brief at 4).

¶ 6 Initially, Appellant argues the evidence was insufficient to prove beyond a reasonable doubt that she had removed the fake nails from the Pharmor store with the intent to deprive the store of property. Appellant contends neither the store manager nor the surveillance camera caught her in the act of shoplifting. Appellant further submits it is impossible to prove that any items were actually taken from the Pharmor store on July 17, 2001, absent evidence of a formal inventory completed after the incident. Appellant maintains the Commonwealth failed to prove that the alarm system was not triggered accidentally, because the alarm is triggered accidentally on a daily basis and an employee simply may have failed to deactivate the alarm code sticker. Appellant concludes the evidence was insufficient to convict her of retail theft and she is entitled to an acquittal. We disagree.

¶ 7 When evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth as the verdict winner and accept as true all of its evidence, together with all reasonable inferences from that evidence, to determine whether the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave*, 745 A.2d 20, 22 (2000), *appeal denied*, 563 Pa. 683, 760 A.2d 851 (2000) (internal citations omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Id.* Our legislature has defined the offense of retail theft as follows:

**§ 3929. Retail theft**

**(a) Offense defined.**—A person is guilty of a retail theft if [s]he:

(1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof[.]

18 Pa.C.S.A. § 3929(a)(1). Further, "[f]light does indicate consciousness of guilt, and a trial court may consider this as evidence, along with other proof, from which guilt may be inferred." *Hargrave, supra* at 23 (internal citations omitted).

¶ 8 Instantly, when we review the evidence adduced at trial in favor of the Commonwealth as the verdict winner, the evidence demonstrates that Appellant was present at the Pharmor store on July 17, 2001. She had two sets of fake nails concealed in her handbag when she attempted to exit the store. One of the nail sets still had the security device affixed to its pack-

age. Appellant produced no evidence of a completed purchase of the nails. *See* 18 Pa.C.S.A. § 3929(a)(1). Moreover, upon learning that the store manager was going to call the police, Appellant fled the store and quickly drove away in a white car. *See Hargrave, supra.* Thus the evidence admitted at trial was sufficient to prove each element of the offense of retail theft. *See id.*

¶ 9 Next, Appellant directs our attention to Officer Marko's testimony regarding the conversation he had with Appellant's sister. Appellant asserts her sister's comments were inadmissible hearsay, because they were out-of-court statements offered to prove the truth of the matter asserted. Specifically, Appellant objects to that portion of Officer Marko's testimony in which he revealed that Appellant's sister had identified Appellant by name as the person fleeing the scene on the day in question. Appellant maintains that Officer Marko's testimony regarding the identification statements made by Appellant's sister did not qualify as an exception to the hearsay rule, as her sister did not testify at trial. Appellant concludes it was reversible error to admit the prejudicial hearsay and she is entitled to a new trial on this basis. Although we agree that the identification was inadmissible hearsay, if offered to show the truth of the matter asserted, we disagree that its admission warrants a new trial.

¶ 10 "The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." *Commonwealth v. Cunningham,* 805 A.2d 566, 572 (Pa.Super.2002), *appeal denied,* 573 Pa. 663, 820 A.2d 703 (2003). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unrea-

sonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Cameron,* 780 A.2d 688, 692 (Pa.Super.2001).

¶ 11 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). *See generally* David F. Binder, *Binder on Pennsylvania Evidence* § 8.01 (3d ed.2003). "Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Cunningham, supra* at 572. *See, e.g.,* Pa.R.E. 803 (listing exceptions). On the other hand, "evidence that would constitute inadmissible hearsay if offered to for one purpose may be admitted for another purpose...." *Commonwealth v. Underwood,* 347 Pa.Super. 256, 500 A.2d 820, 822 (1985) (collecting cases). "[A]n out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. Cruz,* 489 Pa. 559, 565, 414 A.2d 1032, 1035 (1980). *See also Binder on Pennsylvania Evidence* § 8.01 at 406.

¶ 12 The tension between "course of conduct" testimony and inadmissible hearsay was explored in *Commonwealth v. Thomas,* 396 Pa.Super. 92, 578 A.2d 422 (1990), where this Court was presented with a similar challenge. In addressing the issue, we stated:

> The testimony appellant challenges was offered by the Commonwealth during direct examination of Officer Greiner, one of two police officers involved in the investigation of the stolen car.
>
> * * *
>
> [COMMONWEALTH]: Now, you spoke that evening with...a gentleman named Dale Harris?

A. Correct.

Q. Now, you can't tell us what Dale Harris said. What did you do, what action did you take as a result of the conversation you had with Dale Harris?

A. Information that I received from Dale Harris.

Q. Be careful not to tell us what that information was.

[DEFENSE COUNSEL]: Objection. I ask he ask [a] question. If there is an answer that is objectionable, I will make it. He says repeatedly [what] a witness can or cannot do.

THE COURT: Well, I suppose the District Attorney is trying to be super cautious about eliminating the possibility for inadmissible information, hearsay testimony to be heard by the jury. Of course, you are right. You are attentive and you are ready, willing, and able to object when you think it is proper. Go ahead.

[COMMONWEALTH]: What did Dale Harris tell you?

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained.

[COMMONWEALTH]:

Q. After you had a conversation with Dale Harris, what did you do?

A. I wrote it down while I was gathering the information.

Q. **And, as a result of the conversation with Dale Harris, what was your next action?**

A. I spoke with Mr. Greene, gathered his information.

Q. **With information from both of these individuals, what did you do?**

A. **I wrote an affidavit for arrest warrant for [the appellant].**

Q. Now, that evening...when you left it, when you left the dwelling, St. Clair Village, did you do something that eve-

ning **as a result of the conversation with Dale Harris?**

A. Yes I did two things. No. 1, I put a description of the automobile out on the air, and the license plate number.... After I put that broadcast out on the radio, I received—

Q. Don't tell us what you received. Now, other than putting it out on the radio, did you not also visit a residence that evening?

A. Yes, I did.

* * *

Q. Did you speak with someone there?

A. Yes, I did.

* * *

Q. Identify herself?

A. Yes, she did.

Q. Her name?

A. Her name is—

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[COMMONWEALTH]:

Q. Her name?

A. Her name is Mrs. Thomas.

Q. Did she have a relationship to the accused?

A. Her son.

(N.T. Trial, 6/13/88, at 63–66 (emphasis added)).

Essentially, appellant argues that the Commonwealth, through this testimony, introduced statements in the form of oblique narratives to prove that Dale Harris, who knew and could reliably identify appellant, accused appellant of committing the crime. As Harris himself was not available for cross examination, appellant claims he was prejudiced by not having the opportunity to confront and cross-examine his accuser. We are constrained to agree.

[I]n *Commonwealth v. Palsa,* 521 Pa. 113, 555 A.2d 808 (1989), our Supreme

Court recently reviewed a similar challenge to testimony which the prosecution claimed was justifiably introduced to explain police conduct. There, the Supreme Court observed,

> It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted. *Commonwealth v. Sneed*, 514 Pa. 597, 606–07, 526 A.2d 749, 754 (1987); *Cruz*, [*supra*] (police responded to radio call reporting a disturbance); *Commonwealth v. Sampson*, 454 Pa. 215, 219, 311 A.2d 624, 626 (1973) (police declined to arrest an individual who asserted his innocence); *Commonwealth v. Tselepis*, [198 Pa.Super. 449] 181 A.2d 710, 712 (Pa.Super.1962) (police acted upon informant's tip that defendant was conducting a lottery). *See also* [*Underwood*, *supra*] ("This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest.").
>
> Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, **for such would nullify an accused's right to cross-examine and confront the witnesses against him.**

*Palsa, supra*, at 118, 555 A.2d at 811, 812 (footnotes omitted). The *Palsa* court, after noting that the challenged statements were likely to be understood by the jury as themselves proving the elements of the crime for which the defendant was charged, concluded,

> In this case, the police easily could have explained the course of their conduct pertaining to the investigation and arrest of appellant...without resorting to the full and explicit statements given by [the informant]. It is the prosecutor's duty to avoid the introduction of out-of-court statements that go beyond what is reasonably necessary to explain police conduct....
>
> The statements could have been attenuated in other ways, too, to lessen their prejudicial impact.
>
> Thus, an adequate explanation for police conduct could have been provided, while minimizing the introduction of statements made by a person who was not under oath and who was not available for cross-examination.

*Palsa, supra*, at 118, 555 A.2d at 811 (emphasis deleted).

Applying this rationale instantly, we find that the testimony challenged herein constitutes inadmissible hearsay. Here, the fact that the crime had been committed was not questioned; the sole issue at trial was **one of identity.** The prosecution sought to buttress the in-court identification of appellant made by the victim (who had never seen appellant before the incident in question) with another, far more reliable **out-of-court** identification made by a person who knew the name of the individual, with whom the person had been when they happened upon the victim's disabled car,

which the individual fixed and then promptly stole. Though couched in terms of course of conduct testimony ostensibly in compliance with the hearsay rule, the challenged testimony conveyed the impression that Dale Harris **identified** appellant as the perpetrator and constituted impermissible "oblique narrative." *See Commonwealth v. Farris*, [251 Pa.Super. 277] 380 A.2d 486 ( [Pa.Super.] 1977).

*Id.* at 425–27 (some emphasis added). As our Supreme Court explained:

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, **cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.**

*Palsa, supra* at 118, 555 A.2d at 810–11 (emphasis added). *See also Binder on Pennsylvania Evidence* § 8.01 at 409–11.

¶ 13 At Appellant's trial in the instant case, Officer Marko testified as follows:

BY [COMMONWEALTH]:

Q. What did you see when you arrived?

A. When I arrived on the scene I talked with Mr. Conrad, the manager. He filled me in on the events that occurred prior to arrival. He indicated there was a female sitting on a bench outside of the store that would possibly be the suspect's sister.

Q. What did you do?

A. I went out and interviewed the lady on the bench there. She indicated to me—

[DEFENSE COUNSEL]: Objection, hearsay.

THE COURT: Sustained.

BY [COMMONWEALTH]:

Q. Based upon your conversation with this individual, what happened?

A. We received the name of the person driving a white Nissan that the suspect was seen leaving in. Based on that information, I went to B.C.I. to obtain a photo.

Q. What name?

A. **Monica Dent.**

[DEFENSE COUNSEL]: I object.

THE COURT: I will allow it.

\* \* \*

(N.T. Trial, 6/27/02, at 16–17) (emphasis added). Appellant maintained at trial that she was not in the Pharmor store on July 17, 2001. The actual surveillance videotape was not available at trial in any form. Thus, the Commonwealth's case relied in part on the identification made by Officer Marko, which was directly buttressed by the far more reliable out-of-court identification made by Appellant's sister. *See Thomas, supra.* Despite defense counsel's objection, the trial court allowed Officer Marko's full testimony under the rubric of "course of investigation" or "course of conduct," and in support of its decision principally cites *Cruz, supra.* We note, however, that in *Cruz* the alleged hearsay in the form of a police radio call was also "irrelevant to the Commonwealth's case and its contents did not **incriminate** Cruz in any way." *Id.* at 565, 414 A.2d at 1035 (emphasis added). *See also Binder on Pennsylvania Evidence* § 8.01 at 406.

¶ 14 "Course of conduct" narratives often include out-of-court statements that are not offered for the truth of the matter asserted therein; frequently, the statements are also non-essential to the prosecution's case, or the declarant testifies at trial, or the defendant opened the door to the admission of the evidence, or the admission of the statements was deemed harmless error. *See Commonwealth v. Jones,* 540 Pa. 442, 658 A.2d 746 (1995) (allowing police officer to provide comprehensive review of all rumors and leads pursued and chronologically related to progress of investigation where defense attacked adequacy of police investigation; police officer's testimony was cumulative; prosecution otherwise presented overwhelming evidence of guilt); *Sneed, supra* (allowing hearsay testimony on content of police radio call offered to explain police officer's course of conduct); *Sampson, supra* (allowing testimony of police officer on **redirect** examination as to content of statement given by third party, in part to explain why police did not arrest and charge third party, after defense counsel cross-examined police officer on that topic); *Commonwealth v. Collazo,* 440 Pa.Super. 13, 654 A.2d 1174 (1995) (allowing police testimony that informant gave agreed-upon signal of consummated drug deal to explain why police moved in to apprehend and arrest appellant, where police officer testified from personal knowledge and observation and court gave cautionary instruction to jury); *Commonwealth v. Carelli,* 377 Pa.Super. 117, 546 A.2d 1185 (1988), *appeal denied,* 521 Pa. 609, 557 A.2d 341 (1989) (allowing testimony regarding police radio report announcing theft and content of anonymous tip, and statement of appellant's wife that appellant was in garage, as part of police investigation); *Underwood, supra* (allowing police officer to testify to exclamations of others that appellant had

just robbed someone, because exclamations used solely to explain why police officer arrested appellant); *Commonwealth v. Matthews,* 314 Pa.Super. 38, 460 A.2d 362 (1983) (permitting police officer's testimony on information received from confidential informant as to location of stolen items because it explained why police officers investigated reported location); *Commonwealth v. Lewis,* 314 Pa.Super. 298, 460 A.2d 1149 (1983) (allowing victim's testimony on remarks by a third person because information contained therein explained events and course of conduct that preceded appellant's arrest and was part of its history). *Binder on Pennsylvania Evidence* § 8.01 at 407 suggests the admissibility or exclusion of such statements is subject to a Rule 403 analysis. *Id.*

¶ 15 The facts of the present case are more akin to *Thomas, supra.* As in *Thomas,* here the Commonwealth introduced direct identification evidence in the form of an oblique narrative. *See Palsa, supra.* Although Appellant's sister did not directly accuse Appellant of committing a crime, she identified the suspect who had fled the store and sped from the parking lot in a white car. Appellant's sister not only identified Appellant by name but also placed her at the scene of the crime. Officer Marko had not seen Appellant at the store, so his entire investigation was built on the statement from Appellant's own sister. Based solely on the name Appellant's sister had given him, Officer Marko was able to trace Appellant through the system and obtain a photograph of her for comparison with the surveillance videotape. *See Thomas, supra.* Appellant's sister's out-of-court statement directly incriminated Appellant and buttressed the Commonwealth's case for identifying Appellant as the perpetrator of the offense. *See id.* The significance of its potential

effect cannot be overstated, where the identification of the suspect was an essential and pivotal question at trial. Moreover, the statement of Appellant's sister was not loosely attenuated to or buried in Officer Marko's overall course of investigation testimony. *Id.* Even in the context in which it was offered, the statement by Appellant's sister could be construed as proof of Appellant's guilt "through a person not under oath and not available for cross-examination." *Id.* Therefore, we conclude this aspect of Officer Marko's testimony was inadmissible hearsay that should have been excluded. *See Palsa, supra.*

¶ 16 Nevertheless, *Palsa, Thomas,* and *Farris* all involved jury trials. Indeed, the concern with identification evidence presented in the form of oblique narratives relating the course of police investigation is that a **jury** will accept third-party declarations as substantive evidence of guilt without giving the defendant an opportunity to cross-examine the declarant. *Jones, supra* at 452, 658 A.2d at 751. This concern, however, does not predominate in non-jury trials, because "trial judges sitting as fact finders in criminal cases are presumed to ignore prejudicial evidence in reaching a verdict." *Commonwealth v. Irwin,* 397 Pa.Super. 109, 579 A.2d 955, 957 (1990), *appeal denied,* 527 Pa. 592, 588 A.2d 913 (1991). In a non-jury trial, the judge is presumed to have disregarded inadmissible hearsay testimony. *See In re J.H.,* 737 A.2d 275 (Pa.Super.1999), *appeal denied,* 562 Pa.

671, 753 A.2d 819 (2000). As the Pennsylvania Supreme Court has aptly said:

> [I]t is of the essence of the judicial function to hear or view proffered evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded.

*Commonwealth v. Green,* 464 Pa. 557, 561, 347 A.2d 682, 683 (1975). *See also Binder on Pennsylvania Evidence* § 4.03 at 82–85 (discussing exclusion of relevant evidence).

¶ 17 In the instant case, the trial judge was fully aware of the nature and purpose of Officer Marko's testimony. *See Irwin, supra.* Although the identification statement of Appellant's sister was inadmissible hearsay included in Officer Marko's testimony, the guilty verdict alone is insufficient to overcome the presumption that the court did not regard the prejudicial identification statement as substantive evidence of Appellant's guilt. *See Commonwealth v. Beltz,* 829 A.2d 680 (2003) (stating proof of error in admission or exclusion of evidence is not enough to warrant new trial unless defendant can also prove she was prejudiced by such error). In sustaining many of Appellant's objections, the trial court made clear that it understood the limited purpose of Officer Marko's testimony, and considered that testimony strictly as "course of conduct" evidence. (*See* Trial Court Opinion at 4–5). Accordingly, we decline to disturb the verdict on this ground.[2]

---

**2.** "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Drummond,* 775 A.2d 849, 853 (Pa.Super.2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001). Harmless error exists if (1) the error did not prejudice the defendant or the prejudice was *de minimus;* (2) the erroneously admitted evidence

was merely cumulative of other untainted, substantially similar, and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence admitted at trial was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995). Thus, an error

¶ 18 In her third issue, Appellant claims trial by ambush. Appellant contends the Commonwealth presented testimony at trial regarding the content of the surveillance videotape from the Pharmor store but did not ever produce the tape, and the tape was not available at trial. Appellant submits her trial counsel filed an "informal" request for pretrial discovery and inspection, which specifically called for, *inter alia,* records of electronic surveillance. By virtue of trial counsel's objection, appellate counsel [3] argues that the surveillance videotape was withheld in discovery or not mentioned in the prosecution's discovery materials, in violation of discovery rules. Although Appellant acknowledges that the trial court had broad discretion in choosing the appropriate remedy for this discovery violation, she insists the disclosure of the surveillance tape was mandatory under Pa.R.Crim.P. 573(B) in light of her request.[4] Nevertheless, Appellant submits the Commonwealth's failure to disclose the videotape and the subsequent testimony about it at trial caused her undue prejudice, as the videotape testimony helped the Commonwealth to establish Appellant's presence in the Pharmor store on the date in question.

¶ 19 Appellant also argues the videotape was material to her case in that "the interpretation of the suspect's identity and what happened in the store were crucial to a determination of guilt." (Appellant's Brief at 15). Both Mr. Conrad and Officer Marko reviewed the content of the videotape and Officer Marko used it to match the woman on the tape with the B.C.I. photograph of Appellant and make a positive identification. In view of the Commonwealth's *failure to disclose the videotape pretrial or present it at trial,* Appellant insists all testimony regarding the videotape should have been excluded. For these reasons, Appellant concludes the trial court erred in admitting testimony about the videotape from the store's surveillance camera.

¶ 20 In response, the Commonwealth asserts it was unable to find any discovery request at the "designated place" and the request does not appear in the record certified for this appeal. The Commonwealth states that even if Appellant had made the request, the Commonwealth's failure to disclose the videotape cannot be considered a violation of Rule 573, because the prosecutor did not view the tape, never

---

at trial, which viewed by itself is not minimal, may nonetheless be harmless, if it is merely cumulative of untainted and properly admitted evidence. *Commonwealth v. Story,* 476 Pa. 391, 411, 383 A.2d 155, 165 (1978) (setting standards for harmless error analysis). "In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error was harmless beyond a reasonable doubt rests upon the Commonwealth." *Drummond, supra* at 853 (quoting *Commonwealth v. Rasheed,* 536 Pa. 567, 570–71, 640 A.2d 896, 898 (1994)).

In the instant case, the Commonwealth has failed to raise or argue that the admission of the statement at issue was harmless error. *See Drummond, supra.* Although the Commonwealth suggests it was the Pharmor store manager's face-to-face confrontation with Appellant and his discovery of store items in her

purse that gave rise to the charges, this suggestion is not raised in the context of a "harmless error" analysis. *See id.* Instead, the suggestion relates solely to Appellant's discovery issue. Importantly, the trial court demonstrated it had considered the police officer's testimony strictly as "course of conduct" evidence. Accordingly, we refrain from applying the "harmless error" doctrine to this issue.

3. The trial court appointed new counsel on behalf of Appellant for purposes of this appeal.

4. Appellant does not specify which subsection(s) of the Rule applied to the alleged discovery requests, including the surveillance videotape request.

had the tape in his possession, and was not aware of the videotape prior to the day of trial. The Commonwealth cites *Commonwealth v. McElroy,* 445 Pa.Super. 336, 665 A.2d 813 (1995), *appeal denied,* 544 Pa. 610, 674 A.2d 1073 (1996), for the proposition that it cannot be held responsible for failing to provide the surveillance videotape when the tape was not ever in its possession, the tape having been overridden shortly after the incident. (Commonwealth's Brief at 9–11). The Commonwealth concludes this claim of discovery violation warrants no relief. We agree.

¶ 21 The Pennsylvania Rules of Criminal Procedure Rule 573, effective April 1, 2001, governs discovery and provides in relevant part as follows:

**Rule 573.   Pretrial Discovery and Inspection**

**(A) Informal**

Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion to the court. Such motion shall be made within 14 days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

**(B) Disclosure   by   the   Commonwealth**

*(1) Mandatory:*

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573(A); (B)(1)(a)-(g). Further, Rule 573A initially mandates that counsel for the parties must make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute, before court intervention is sought to enforce disclosure or discovery under these rules by either party. Pa.R.Crim.P. 573(A) (Informal). Nevertheless, the Rule also provides that if there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion to the court and such motion shall be made within 14 days after arraignment, unless the time for filing is extended by the court. *Id.* In that motion, the demanding party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. *Id.*

▮ ¶ 22 The defendant may request and the Commonwealth is required to produce inculpatory evidence that is relevant **and** within its possession. *McElroy, supra* (declining to hold prosecution responsible for tape recordings that were not in possession of prosecution, and suggesting proper procedure for defendant was service of subpoena *duces tecum* upon proper custodian of record). *See, e.g., Commonwealth v. Sullivan,* 820 A.2d 795 (Pa.Super.2003), *appeal denied,* —— Pa. ——, 833 A.2d 143 (2003) (applying rule of mandatory disclosure of inculpatory statements only to those statements within possession and control of prosecution). *But see, e.g., Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136 (2001) (extending obligation under *Brady*[5]; *i.e.,* mandatory disclosure, to exculpatory or evidence **favorable** to defense that rests in files of police agencies of same government bringing prosecution).

With respect to exculpatory evidence, *Burke* appears to abrogate the qualifying language found in Rule 573(B)(1)(a).[6] *Sullivan, supra.* However, where the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence. *McElroy, supra.*

▮ ¶ 23 In the instant case, the record makes clear that Appellant did not file a motion to produce as provided in Rule 573(A), even though she may have made an "informal request" of the Commonwealth. *See* Pa.R.Crim.P. 573(A). Further, there is no record evidence that the Commonwealth ever had possession or control over the surveillance videotape, and Appellant did not subpoena the videotape from the store. In fact, Mr. Conrad testified at trial that a glitch in the hard drive prevented him from creating still photographs from the videotape before the videotape recycled automatically shortly after the incident. Although relevant to the case, we conclude the videotape was equally inaccessible to both the Commonwealth and the defense. Therefore, Appellant cannot use the discovery rules against the Commonwealth for its failure to produce the surveillance videotape. *See McElroy, supra.*

¶ 24 The last part of Appellant's third issue alleges the Commonwealth was improperly permitted to offer testimony about the surveillance videotape in violation of the "best evidence" rule. Appellant's claim compels separate treatment, because it is raised as a claim of ineffective assistance of appellate counsel. Specifically, Appellant asserts all testimony about the videotape should have been barred un-

---

**5.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** The effective date of Rule 573 was April 1, 2001. *Burke* was decided October 17, 2001.

der the "best evidence" rule, which prevents a witness from testifying to the content of the videotape when the videotape itself has not been produced and admitted into evidence.

¶ 25 We note appellate counsel failed to raise the "best evidence" rule argument in Appellant's Rule 1925(b) statement of matters complained of on appeal. The failure to raise this issue in the Rule 1925(b) statement constitutes waiver of the claim under *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998). However, Appellant avers that this particular issue should not be deemed waived because it was properly preserved at the trial level, and appellate counsel is now simply raising her own ineffectiveness for failing to include it in Appellant's Rule 1925(b) statement. In support of her position, Appellant cites *Commonwealth v. Johnson*, 565 Pa. 51, 771 A.2d 751 (2001) (suspending *Lord* in limited instance and allowing review of appellate counsel's claims of ineffectiveness on direct appeal, where it is clear from record that claim is meritorious or wholly without merit). Appellant concludes this Court should consider her issue because (1) appellate counsel was ineffective for failing to include the "best evidence" rule claim in Appellant's Rule 1925(b) statement, and (2) appellate counsel's ineffectiveness is apparent on the record.

¶ 26 The Commonwealth suggests that appellate counsel's concern with her own ineffectiveness is unwarranted, because the "best evidence" rule does not apply. The Commonwealth contends that the videotape was not integral to proving a central issue in the case, as it did not show Appellant in the act of shoplifting. Testimony regarding the content of the videotape was used only to establish what Officer Marko did with it after securing Appellant's photograph from B.C.I. Mr. Conrad actually confronted Appellant and had personal knowledge of her presence in the store. However, the Commonwealth submits that the content of the videotape could arguably be considered inadmissible hearsay to the extent the testimony about the videotape was used to establish Appellant's presence in the store,[7] and the tape was unavailable at trial. Although the hearsay argument was abandoned by appellate counsel on appeal, the Commonwealth recommends that we review Appellant's entire claim in the interests of justice. For the following reasons, we agree in part.[8]

¶ 27 As a prefatory matter, our Supreme Court recently limited review of ineffective assistance of trial counsel claims on direct appeal. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). *Grant* provides:

[A]s a general rule, a petitioner should wait to raise claims of ineffective assis-

---

**7.** Appellant expressly avoids arguing a violation of the hearsay rule in this context, stating the admissibility of the videotape is **not** governed by the hearsay rule, as the actions on the tape were not intended to convey a message. (Appellant's Brief at 16 n. 7).

**8.** We dismiss the Commonwealth's suggestion that the content of the videotape could arguably be considered inadmissible hearsay to the extent the testimony about the videotape was used to establish Appellant's presence in the store. *See Commonwealth v. Lewis*, 424 Pa.Super. 531, 623 A.2d 355, 357 (1993) (re-

jecting application of hearsay rule to testimony in retail theft case regarding conduct of appellant as recorded on surveillance videotape because appellant's conduct was not intended to convey message). *See also Binder on Pennsylvania Evidence* § 8.01 at 408 (stating most nonverbal conduct is nonassertive); for example, a "surveillance videotape in which the subject is not aware of the filming, is non-assertive, and, therefore, not hearsay" (citing *Davis v. Civil Serv. Com'n of the City of Philadelphia*, 820 A.2d 874 (Pa.Cmwlth. 2003)).

tance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity. Our holding today does not alter the waiver provision of the PCRA, 42 Pa.C.S.A. § 9544(b); it merely alters that time when a claim will be considered waived. Simply stated, a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness.

*Id.* at 67, 813 A.2d at 738 (footnote omitted). Our Supreme Court reasoned:

Waiting to raise the claims on collateral review affords the opportunity to develop a factual basis for the claim that counsel's performance did not meet the standard for effective assistance of trial counsel. Many of these claims are based on omissions, which, by their very nature, do not appear on the record and thus, require further fact-finding, extra-record investigation and where necessary, an evidentiary hearing.

Related to this rationale is the general belief that an appellate court should not consider issues that were not raised and developed in the court below. Courts have recognized that this general rule and its accompanying rationale apply equally to ineffectiveness claims.

*Id.* at 64, 813 A.2d at 736 (internal citations omitted). As this Court explained:

Underlying the rule announced in *Grant* is the Court's observation that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffectiveness." *Id.* at 737. As a result, "the record may not be sufficiently developed on direct appeal to permit adequate review of ineffectiveness claims[.]" *Id.* Because "appellate

courts do not normally consider issues that were not raised and developed in the court below" *id.*, the *Grant* court reasoned that "[d]eferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.*

*Commonwealth v. Hudson,* 820 A.2d 720, 725 (Pa.Super.2003).

¶ 28 After our Supreme Court's announcement, this Court carved out a very limited exception to the general rule set forth in *Grant,* to address the specific situation where an appellant will not be able to challenge, in a collateral proceeding, her constitutional right to effective assistance of counsel because of the short duration of her sentence. *Commonwealth v. Salisbury,* 823 A.2d 914 (Pa.Super.2003). *See also Commonwealth v. Duda,* 831 A.2d 728 (2003) (reviewing claim of ineffectiveness of counsel on direct appeal due to shortness of appellant's sentence); *Commonwealth v. Ingold,* 823 A.2d 917 (Pa.Super.2003), *appeal denied,* —— Pa. ——, 832 A.2d 435 (2003) (making exception to *Grant* to accommodate situation where appellant's sentence of seven days time served was too short to raise ineffectiveness claim in PCRA petition). *But see Commonwealth v. Millward,* 830 A.2d 991 (2003) (declining to apply *Salisbury/Ingold* exception, where appellant was sentenced to 90 days' imprisonment and a concurrent 3 years' probation and still had almost two years to litigate PCRA petition).

¶ 29 The *Salisbury/Ingold* exception is premised on the PCRA statute at 42 Pa. C.S.A. § 9543(a)(1)(i) (referring to PCRA's eligibility requirement that petitioner is **"at the time relief is granted"** currently serving sentence of imprisonment, probation or parole for crime on which petition is based) and the Supreme Court's decision

in *Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718 (1997) (holding PCRA statute requires that petitioner must be "currently serving" sentence of imprisonment, parole, or probation on underlying crime not only when petition is filed but also **when decision on petition is rendered**).

¶ 30 Instantly, appellate counsel has raised her own ineffectiveness on direct appeal for failing to preserve for review the "best evidence" rule claim that had actually been properly preserved by trial counsel. When appellate counsel was appointed, she was responsible for filing the court-ordered Rule 1925(b) concise statement of matters complained of on appeal. Appellate counsel failed to list this claim in the Rule 1925(b) statement. Consequently, the trial court opinion does not address it.

¶ 31 However, Appellant was sentenced on July 17, 2002 to one year of probation, immediately effective and concurrent with the sentence she was then serving on an unrelated crime. Appellant's sentence has now expired. If we deem her issue waived under *Lord, supra* and apply *Grant, supra,* Appellant will be deprived of the opportunity to have her substantive claim reviewed in the future because she is no longer serving a sentence of imprisonment, parole or probation on this offense. *See* 42 Pa.C.S.A. § 9543(a)(1)(i); *Ahlborn, supra.* Solely on this basis, therefore, we will review the claim.[9] *See Duda, supra; Salisbury, supra; Ingold, supra.*

¶ 32 Our standard for addressing ineffective assistance of counsel claims involves the following principles:

It is well settled that counsel is presumed effective and the burden of proving ineffectiveness rests with the appellant. To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate: (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that [s]he was prejudiced by counsel's ineffectiveness. In order to meet the prejudice prong of the ineffectiveness standard, [Appellant] must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

*Commonwealth v. Todd,* 820 A.2d 707, 711 (2003), *appeal denied,* —— Pa. ——, 833 A.2d 143 (2003). Defendant has the burden of proving all three prongs of this standard. *Commonwealth v. Jette,* 818 A.2d 533, 536 (2003), *appeal denied,* —— Pa. ——, 833 A.2d 141 (2003). "Counsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Mann,* 820 A.2d 788, 792 (2003), *appeal denied,* —— Pa. ——, 831 A.2d 599 (2003). "Further, if it is clear that a defendant has failed to meet the prejudice prong, the claim may be dismissed on that basis alone." *Jette, supra.*

¶ 33 At common law, the "best evidence" rule limited proof of the terms of a writing

---

**9.** Although Appellant argued we should reach the ineffectiveness claim on the basis of *Johnson, supra,* we wish to make eminently clear that we do not employ the *Johnson* plurality or the cases on which it relied as authority to review this claim. *Johnson* and its predecessors relied on *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), which was expressly overruled by *Grant, supra.* Moreover, we note that this Court applied the *Johnson* plurality in *Commonwealth v. Mackert,* 781 A.2d 178 (Pa.Super.2001), *appeal denied,* 568 Pa. 696, 796 A.2d 980 (2002). However, the *Mackert* decision also predated *Grant.* Thus, to the extent that *Mackert* relied on *Johnson, Mackert* has been called into question by *Grant,* and is not controlling.

to production of the original document, if the terms of the instrument were material to the issue under review, unless the original was shown to be unavailable through no fault of the proponent. *Commonwealth v. Fisher,* 764 A.2d 82, 87–88 (Pa.Super.2000), *appeal denied,* 566 Pa. 658, 782 A.2d 542 (2001). Traditionally, Pennsylvania courts applied the "best evidence" rule when the content of documentary evidence was at issue; that is, when the terms of the writing had to be proved to make a case or provide a defense. *Id.* at 88. *See also Binder on Pennsylvania Evidence* § 10.02 at 613.

■■■ ¶ 34 The "best evidence" rule is now embodied in the Pennsylvania Rules of Evidence Rule 1002, which provides:

**Rule 1002. Requirement of original**

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, by other rules prescribed by the Supreme Court, or by statute.

Pa.R.E. 1002. "Writings and recordings" under Rule 1002 include, *inter alia,* electronic recordings and other forms of data compilation. Pa.R.E. 1001; *Fisher, supra; Binder on Pennsylvania Evidence* § 10.02 at 614 (stating Rule 1002 must be read in conjunction with Rule 1003 (governing the admissibility of duplicates) and Rule 1004, both of which significantly qualify Rule 1002). Rule 1004 provides:

**Rule 1004 Admissibility of other evidence of contents**

The original is not required and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) Originals Lost or Destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) Original Not Obtainable. No original can be obtained by any available judicial process or procedure; or,

(3) Original in Possession of Opponent. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(4) Collateral Matters. The writing, recording, or photograph is not closely related to a controlling issue.

Pa.R.E. 1004. If the originals are not available at trial in criminal cases, through no fault of the Commonwealth, secondary evidence is permissible. *Fisher, supra; Binder on Pennsylvania Evidence* § 10.04 at 622 (discussing burden of proof with respect to unavailability of evidence). As to the admissibility of "other evidence" of contents of writings, recordings, or photographs, Rule 1008 also provides:

**Rule 1008. Functions of court and jury**

When the admissibility of other evidence of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question of whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of Pa.R.E. 104. However, when an issue is raised (a) whether the asserted writing ever existed, or (b) whether another writing, recording, or photograph produced at trial is the original, or (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact.

Pa.R.E. 1008. *See also Binder on Pennsylvania Evidence* § 10.08 at 630 (discuss-

ing allocation of fact-finding functions between judge and jury).

¶ 35 If the Commonwealth does not need to prove the contents of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording. *Fisher, supra* (holding Commonwealth was not required to introduce original recordings from voice mail system where phone messages did not provide proof of elements of offenses charged). *See also Commonwealth v. Steward,* 762 A.2d 721 (Pa.Super.2000), *appeal denied,* 566 Pa. 662, 782 A.2d 545 (2001) (holding eyewitness testimony obviates need to produce videotape made simultaneously; videotape evidence does not rise to level of "best evidence" when eyewitness testifies from personal knowledge). *But see Lewis, supra* (reversing and remanding for new trial because police officer's testimony at trial as to appellant's alleged act of retail theft was based solely upon police officer's review of surveillance videotape, and explanation concerning unavailability of videotape was unsatisfactory; and police officer's testimony was not harmless error, because other properly admitted evidence was not so overwhelming, police officer's testimony was not cumulative, and his testimony was not tangential or *de minimus* ).

¶ 36 In the instant case, the surveillance videotape at issue was unavailable at trial. Mr. Conrad, the store manager, explained that he was unable to produce the videotape at trial because the store surveillance system was computerized and recycled itself automatically. Although still pictures could conceivably have been made, Mr. Conrad testified that as a practical matter the computer system failed soon after the incident and the hard drive had to be completely replaced. *See* Pa.R.E. 1004. Nevertheless,

Mr. Conrad had encountered Appellant face-to-face in the store and had found unpaid-for store items in her bag. Mr. Conrad's in-court identification of Appellant was therefore based on personal knowledge. Thus, the surveillance videotape was not the "best evidence" of Appellant's presence in the store on the date and at the time in question. *See Steward, supra.* Indeed, Mr. Conrad's testimony regarding the videotape was limited to the issue of Appellant's presence in the store and did not address the commission of any offense. *See Fisher, supra.* Accordingly, Mr. Conrad's testimony in this respect was properly admitted at trial without the necessity of producing the original surveillance videotape. *See* Pa. R.E. 1008; *Steward, supra.*

¶ 37 Regarding Officer Marko's testimony about the videotape, again it was used for the limited purpose of his course of investigation. To the extent it was used to establish Appellant's presence in the store, it was cumulative of Mr. Conrad's properly admitted identification testimony. Therefore, Appellant's issue lacks arguable merit. *See Todd, supra.* Accordingly, appellate counsel will not be deemed ineffective for failing to list this particular issue in Appellant's court-ordered Rule 1925(b) statement. *See Jette, supra.*

¶ 38 Based upon the foregoing, we hold that the totality of the evidence admitted at trial was sufficient to sustain Appellant's conviction for retail theft. Further, the police officer's testimony that he had obtained a photograph of Appellant based upon a conversation in which Appellant's sister identified Appellant by name as the person fleeing the scene of the crime constituted inadmissible hearsay. Nevertheless, Appellant is not entitled to a new trial solely on this basis, because, absent evidence to the contrary, we can presume the

trial court sitting as trier of fact disregarded the inadmissible hearsay testimony. Finally, we reject Appellant's challenges to the admissibility of the testimony concerning the surveillance videotape because it was "unavailable" at trial. Accordingly, we affirm Appellant's judgment of sentence.

¶ 39 Judgment of sentence affirmed.