J-S38014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL DORSEY | : | |
| | : | |
| Appellant | : | No. 2370 EDA 2018 |

Appeal from the Judgment of Sentence Entered March 1, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008236-2016

BEFORE:   OTT, J., DUBOW, J., and COLINS[*], J.

MEMORANDUM BY OTT, J.:                **FILED AUGUST 26, 2019**

Michael Dorsey appeals, *nunc pro tunc*, from the judgment of sentence imposed on March 1, 2018, in the Philadelphia County Court of Common Pleas. The trial court sentenced Dorsey to a term of 2½ to 5 years' imprisonment following his non-jury conviction of receiving stolen property.[1]  On appeal, Dorsey challenges an evidentiary ruling.  For the reasons that follow, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3925.

We take the underlying facts and procedural history in this matter from our review of the certified record. The instant matter arises out of Dorsey's theft of $260.00 in petty cash from his employer, who is also Dorsey's brother.

At trial, Dorsey's sister-in-law, Juanita Dorsey ("Sister-in-law") testified that, on May 31, 2017, she placed a white envelope containing $260.00 in petty cash in her husband's,[2] John Dorsey's ("Brother") desk at his auto body shop. Sister-in-law testified that, after so doing, she locked Brother's office door and left for the day. She explained that Brother's office has a separate key from the main shop door. She said that only four people have keys to that door: herself, Brother, Brother's son Cecil ("Nephew"), and another employee. Dorsey did not have a key to the door. The next morning, at around 8:00 a.m., Sister-in-law was the first to arrive at the business, and indicated this was surprising to her because Dorsey normally arrived first. When Sister-in-law opened Brother's office door and checked his desk, the money was gone. A few minutes after Sister-in-law arrived, she saw Dorsey getting off his bus. Sister-in-law also noted the business had a video surveillance system. She stated that she was unfamiliar with the system and Nephew was the only person who knew how to use it.

---

[2] At the time of the incident, Sister-in-law was engaged to Brother. They subsequently married.

Brother also testified at trial. He stated that, immediately upon his arrival, Sister-in-law informed him about the missing money. He gathered his employees and spoke with them but no one confessed to taking the money. One of them reminded him about the video surveillance system. Although Brother had installed the system approximately five years previously, he had never read the manual or used the system. Over defense counsel's objection, as discussed in detail below, the trial court permitted Brother to testify about what he viewed on the footage.

Brother averred that the video footage showed the arrival of the tenant who rented the other half of the building at approximately 7:30 a.m. Dorsey arrived right behind him and the two men greeted each other. Dorsey walked past the reception area, past Brother's office, and into the work area. Less than ten minutes passed before Dorsey walked back past the camera holding the same bag he carried in, went down the stairs, and outside the building. The video showed Dorsey stuffing a white envelope into his right front pants' pocket. After Dorsey left, the video did not show him again until he came back to work from the direction of the bus stop approximately 45 minutes later.

After Brother accused Dorsey of the theft, they got into a physical altercation that other employees broke up. Brother fired Dorsey and ordered him to leave the residence, owned by Brother, in which Dorsey lived. Dorsey ran into the work area and grabbed his bag. He then returned holding a gun,

which the police later determined to be a b.b. gun, and pointed it at Brother. Dorsey threatened to kill everyone and burn down the house he was living in. Ultimately, Dorsey left the area. Brother called the police and reported the crime. The police arrested Dorsey as he was getting out of the passenger side of a car at his residence. They found $244.00, in the denominations of cash detailed to them by Brother, in his right front pants' pocket.

Brother testified he showed a female police detective the video footage. He could not remember her name. He did not remember when she viewed it. He stated she did not have equipment with her to store a copy of the video footage. Brother acknowledged the detective told him that she would be returning to make a copy of it. Brother averred that, when he installed the video system, he left all the settings on automatic; this meant that the system deleted footage and recorded over it every 24 hours. Thus, when the detective returned, the footage was gone. Brother did not remember what day she returned but said it was very close in time to when she originally viewed the footage. He stated he did not remember that the video system would record over old footage. He testified the police officer did not ask him to preserve the footage. Brother admitted he did not furnish the police officer with any information about the video system.

As noted above, defense counsel objected strenuously to Brother's testimony about the contents of the video footage pursuant to the best evidence rule and the Confrontation Clause of the Sixth Amendment of the

United States Constitution. Counsel acknowledged that, under the current law, it was the defense's burden to prove that the Commonwealth acted in bad faith by failing to preserve the video. *See* N.T., 8/15/2017, at 45. Defense counsel admitted that Brother did not act in bad faith but claimed that, by not bringing equipment with her on the first visit and by not telling Brother to preserve the video, the detective acted in bad faith. *Id.* at 60. Counsel maintained that the detective knew or should have known that the system would reset itself in the interim between the first and second visits. *Id.* The trial court disagreed, holding that, as the record stood, the Commonwealth did not act in bad faith. *Id.* at 62-63.

Following the close of Brother's testimony, defense counsel requested the court bifurcate the trial with respect to the video footage. Counsel argued there was a discrepancy between the testimony of Sister-in-law and Brother with respect to Nephew's role in the maintenance of the video system and wished to call both Nephew and the detective who viewed the video footage as part of defense's case-in-chief. *Id.* 102-104. The trial court agreed to issue subpoenas for Nephew and the detective. *Id.* at 122-124.

The trial resumed on December 20, 2017. Defense counsel did not call either witness and there was no further discussion regarding the video footage. The trial court found Dorsey guilty of receiving stolen property and not guilty of a plethora of other offenses.

During the interval between the end of the trial and sentencing, the trial judge left the bench. On March 1, 2018, after receipt of a pre-sentence investigation report, the new judge sentenced Dorsey as noted above. Dorsey did not file a notice of appeal.

On April 4, 2018, Dorsey, acting *pro se*, filed a petition pursuant to the Post-Conviction Relief Act seeking reinstatement of his direct appeal rights.[3] Following appointment of counsel, the PCRA court granted the petition on July 31, 2018. Dorsey filed a timely notice of appeal on August 2, 2018.[4]

In his only issue on appeal, Dorsey argues the trial court's ruling permitting Brother to testify regarding his observations of Dorsey's actions on the body shop surveillance video violated the "best evidence rule."[5] ***See*** Dorsey's Brief at 4. Our review of an evidentiary challenge is well established:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." An abuse of discretion will not be found based on a mere error of judgment,

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

[4] On August 23, 2018, the trial court issued an order directing Dorsey to file a concise statement of errors complained of on appeal. Dorsey filed a timely Rule 1925(b) statement on September 11, 2018. On September 21, 2018, the trial court issued a letter stating that the only issued raised on appeal concerned an evidentiary ruling by the first trial judge and, therefore, referred this Court to the portion of the transcript containing the ruling.

[5] At trial, defense counsel also argued that the testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. ***See*** N.T. Trial, 8/15/2017, at 42-44. However, counsel has not raised this claim on appeal and we will not address it. Dorsey's Brief, at 17-26.

but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (internal citations omitted), *cert. denied*, 137 S.Ct. 92 (2016).

We have codified the "best evidence rule" in the Pennsylvania Rules of Evidence. Specifically, Rule 1002, in pertinent part, requires a party to introduce "[a]n original writing, recording, or photograph ... in order to prove its content[.]" Pa.R.E. 1002. However, Rule 1004 provides an exception to this general rule when, *inter alia*, "all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" Pa.R.E. 1004(a). As we have explained, "[i]f the originals are not available at trial in criminal cases, through no fault of the Commonwealth, secondary evidence is permissible." *Commonwealth v. Dent*, 837 A.2d 571, 589 (Pa. Super. 2003), *appeal denied*, 863 A.2d 1143 (Pa. 2004).

Dorsey claims the trial court erred in permitting Brother to testify regarding the contents of the missing surveillance footage. He maintains the police mishandled the situation by allowing the video footage to remain with Brother without making their own copy. *See* Dorsey's Brief at 15. Dorsey maintains the admission of Brother's testimony about the contents of the footage was not harmless error because there was no other evidence connecting Dorsey with the theft. *Id.* at 15-16. Dorsey asserts this Court's

decision in **Commonwealth v. Lewis**, 623 A.2d 355 (Pa. Super. 1993), is controlling. We disagree.

In **Lewis**, **supra**, the police arrested the defendant after he and a cohort attempted to shoplift from a store. A store security guard, who observed their activities, apprehended the pair as they left the store. **See id.** at 356–357. At trial, and over defense counsel's objection, the responding police officer testified regarding his observations of the defendant as recorded on a store security camera. The Commonwealth did not present the actual recording as evidence. **See id.**

On appeal, a panel of this Court held the police officer's testimony, absent introduction of the video itself, violated the best evidence rule. A panel of this Court stated:

> We find that the facts in the instant case present the same type of circumstances which the best evidence rule was designed to guard against: a witness is attempting to testify regarding the contents of a videotape when the tape itself has not been admitted into evidence. The need to secure the original evidence itself, in order to insure that the contents of the evidence be given the proper weight, is apparent in this case. Thus, the best evidence rule should apply, in order to prevent any mistransmission of the facts surrounding Appellant's acts in the Sears store which might mislead the jury.

**Id.** at 358. In addition, the panel found the explanation provided for the unavailability of the videotape was unsatisfactory, namely, that the tapes were stored in the basement of the Sears store and the classification system was "imprecise." **Id.** at 359. Furthermore, the panel concluded the admission of the officer's testimony was not harmless error. **Id.**

Here, we conclude the facts in the present matter are distinguishable from *Lewis*. Pursuant to Rule 1004, other evidence of the contents of a video recording is admissible when, *inter alia*, the original is lost or destroyed "unless the proponent lost or destroyed [it] in bad faith[.]" Pa.R.E. 1004(a). In *Lewis*, this Court found the explanation for the unavailability of the original surveillance tape "unsatisfactory." *Lewis*, 623 A.2d at 359. The record did not show that the tape was lost or destroyed; the security guard simply testified he was unable to locate the tape because the classification system was "imprecise." *Id.*

However, here, there is no dispute the surveillance video was unavailable at the time of trial. *See* N.T. Trial, 8/15/2017, at 48-49. Also, the record reflects the detective did attempt to secure a copy of the video footage but because of the system settings, it was erased. *Id.* at 56, 59-60. As noted above, defense counsel agreed that no fault attached to Brother. Moreover, her contention that the detective knew or should have known that the video system would reset itself is mere speculation. Further, while counsel made much of the fact that the detective did not specifically tell Brother to preserve the video, she did tell him she would be returning to make a copy of it. Certainly, implicit in that statement is an expectation that, when she returned, the footage would still be available. Importantly, we note that counsel acknowledged it was the defense's burden to prove bad faith. *Id.* at 45; *see also Commonwealth v. Williams*, 154 A.3d 336, 340 (Pa. Super.

2017) (holding defense required to show Commonwealth acted in bad faith in failing to preserve evidence). Counsel asked for, and the trial court gave her, a bifurcation in order to call the detective in question as a witness. For reasons that are not apparent on the record, counsel chose note to do so. The trial court stated, "I see no bad faith[.]" N.T., 8/15/2017, at 62. Based on our standard of review, we find no reason to disagree. Dorsey is not entitled to relief on this issue. *See Williams*, 154 A.3d at 340-341 (holding that trial court erred in not permitting store owner and police officer to testify as to what they saw on video footage because there was no bad faith shown on part of Commonwealth when store owner inadvertently destroyed footage).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/19