J-S70024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAVID M. COOK | |
| Appellant | No. 3598 EDA 2015 |

Appeal from the Judgment of Sentence November 2, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003466-2015

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 17, 2016**

David M. Cook appeals from the judgment of sentence imposed on November 2, 2015, in the Bucks County Court of Common Pleas.  The trial court sentenced Cook to an aggregate term of 15 to 24 months' incarceration following his jury conviction of simple assault, harassment and disorderly conduct[1] for punching his girlfriend in her face.  On appeal, Cook challenges an evidentiary ruling and the weight of the evidence supporting his convictions.  For the reasons that follow, we affirm.

The facts underlying Cook's convictions are summarized by the trial court as follows:

---

[1] **See** 18 Pa.C.S. §§ 2701(a)(1), 2709(a)(1), and 5503(a)(1), respectively.

The incident underlying [Cook's] convictions occurred on February 6, 2014, at approximately 5:30 p.m., at a Sunoco gas station in Warminster Township, Bucks County. [Cook] was at that gas station when his girlfriend, Kristin Ricci, arrived in a separate vehicle with their three-year-old daughter and her seven-year-old son from a prior relationship. During the course of a loud argument between [Cook] and Ms. Ricci, [Cook] reached into Ms. Ricci's car and punched her in the mouth, splitting her lip. He then fled the scene at a high rate of speed.

Trial Court Opinion, 4/18/2016, at 1. Ricci made a 911 call at the scene and stated her daughter's father had punched her in the face. She also provided a corroborating written statement to police. Cook was subsequently arrested and charged with aforementioned offenses.

However, at both Cook's preliminary hearing and jury trial, Ricci denied Cook had hit her. Rather, she stated she was on medication and got in a heated argument with Cook. She claims that when Cook attempted to prevent her from leaving with the children, she put the car in reverse and slammed her foot on the gas pedal, hitting a snow bank and cutting her lip when her face hit the steering wheel. *See* N.T., 8/25/2015, at 110-111, 113. She also declared she lied to police when she told them Cook hit her.[2]

On August 26, 2015, a jury returned a verdict of guilty on all charges. The next day, the trial court sentenced Cook to a term of one to two years' imprisonment for simple assault, and a consecutive 90 days' imprisonment

_____

[2] At Cook's trial, Ricci also admitted she and Cook were engaged. *See* N.T., 8/25/2015, at 100. The Commonwealth presented her 911 call and her written statement, both implicating Cook, to impeach her testimony. *See id.* at 160-162, 169.

for disorderly conduct.[3]   Cook filed a timely post-sentence motion

challenging the weight of the evidence, and seeking modification of his

sentence.[4]   On September 14, 2015, the trial court entered an order

vacating the sentence imposed, and scheduling a resentencing hearing for

November 2, 2015.[5]   At the resentencing hearing, the court reimposed the

same sentence for the offenses *sub judice*.[6]   This timely appeal follows.[7]

_____

[3] The court found the harassment offense merged with simple assault for sentencing purposes.

[4] The same day Cook was sentenced in the present case, the trial court also imposed sentence on a parole violation of a prior guilty plea, and a contempt of a Protection from Abuse (PFA) order.  Both prior incidents involved Ricci, the same victim as in the present matter.  *See* N.T., 8/27/2015, at 5, 25. The trial court sentenced Cook to 19 months, 18 days back time for the parole violation, and six months' imprisonment for his contempt of the PFA order.  The court ran all of the sentences consecutively.  *See id.* at 53.

In his post-sentence motion, Cook asserted the aggregate sentence was excessive, and that the consecutive sentence for the contempt finding violated double jeopardy because it involved the same conduct as the sentence for the crimes herein.  *See* Post-Sentence Motions, 9/4/2015, at ¶¶ 8-19.  Cook did not raise any sentencing claims on appeal.

[5] The trial court also separated the parole violation matter and directed it to be heard by another judge.  *See* Order, 9/14/2015.

[6] The trial court also reimposed the consecutive contempt sentence, finding it did not violate double jeopardy.  *See* N.T., 11/2/2015, at 12.

[7] On December 3, 2015, the trial court ordered Cook to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Cook complied with the court's directive, and filed a concise statement on December 21, 2015.

In his first issue, Cook argues the trial court's ruling permitting a police officer to testify regarding her observations of Cook's actions on the gas station store surveillance video violated the "best evidence rule." ***See*** Cook's Brief at 12. Our review of an evidentiary challenge is well-established:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (internal citations omitted), *cert. denied*, 2016 WL 3059357 (U.S. Oct. 3, 2016).

The "best evidence rule" is codified in the Pennsylvania Rules of Evidence. Specifically, Rule 1002 requires a party to introduce "[a]n original writing, recording, or photograph … in order to prove its content[.]" Pa.R.E. 1002. However, Rule 1004 provides an exception to the general rule when, *inter alia*, "all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" Pa.R.E. 1004(a). As this Court has explained: "If the originals are not available at trial in criminal cases, through no fault of the Commonwealth, secondary evidence is permissible." ***Commonwealth v. Dent***, 837 A.2d 571, 589 (Pa. Super. 2003), *appeal denied*, 863 A.2d 1143 (Pa. 2004).

In the present case, Warminster Township Police Officer Renee Fox testified that she arrived at the gas station shortly after the 911 call, and attempted to obtain video surveillance footage of the incident. *See* N.T., 8/26/2015, at 10, 17. Officer Fox explained that although she tried to copy the footage onto a flash drive,

> I apparently, didn't export it properly or the system needed something else or it wasn't working, or my flash drive wasn't working and it wasn't on my flash drive when I got back to the station.

*Id.* at 20. Moreover, while Officer Fox was aware video surveillance tapes are stored for only a short period, typically less than 48 hours, she admitted she did not attempt to secure another copy until a few weeks prior to trial. *See id.* at 34, 35. At that point, she learned the video was no longer available. *See id.* at 36. Nevertheless, the trial court permitted Officer Fox to testify as to what she observed on the video. *See id.* at 21-23.

Cook asserts the trial court erred in permitting Officer Fox to testify regarding the contents of the missing surveillance footage. He maintains the officer's "attempts to secure the surveillance footage were unsatisfactory" and she provided no explanation why she failed to return to the station to preserve the footage until a year later. Cook's Brief at 13, 14. Further, Cook contends the court's erroneous admission of Officer Fox's testimony was not harmless error because the officer's description of Cook's actions on the video as a "punch" was directly relevant to Cook's "mental state for the crime charged." *Id.* at 14. Cook asserts this Court's decision in

*Commonwealth v. Lewis*, 623 A.2d 355 (Pa. Super. 1994), is controlling. We disagree.

In *Lewis*, *supra*, the defendant was arrested after he and a cohort attempted to steal a "walkman" from a Sears Department store. A store security guard, who observed their actions, apprehended the two as they left the store. *See id.* at 356-357. At trial, and over the defendant's objection, the responding police officer testified regarding his observations of the defendant as recorded on a store security camera. The actual recording, however, was not presented as evidence. *See id.*

On appeal, a panel of this Court held the officer's testimony, absent introduction of the video itself, violated the best evidence rule.

> We find that the facts in the instant case present the same type of circumstances which the best evidence rule was designed to guard against: a witness is attempting to testify regarding the contents of a videotape when the tape itself has not been admitted into evidence. The need to secure the original evidence itself, in order to insure that the contents of the evidence be given the proper weight, is apparent in this case. Thus, the best evidence rule should apply, in order to prevent any mistransmission of the facts surrounding Appellant's acts in the Sears store which might mislead the jury.

*Id.* at 358. Furthermore, the panel found the explanation provided for the unavailability of the videotape was unsatisfactory, namely, that the tapes were stored in the basement of the Sears store and the classification system was "imprecise." *Id.* at 359. Lastly, the panel concluded the admission of the officer's testimony was not harmless error. The panel explained:

> [W]e have determined that the properly admitted testimony of security guard Stephen Fee does not demonstrate that Appellant

knew that his companion Lohnes placed the radio in his (Lohnes') coat. Therefore, without Officer Barclay's testimony, the remaining evidence is not so overwhelming to have resulted in a conviction absent Barclay's testimony. Nor is Barclay's testimony of a cumulative nature in regard to the other admissible evidence; rather, it is contradictory to Fee's testimony, since Barclay's testimony permits the inference that Appellant knew what his companion was doing.

*Id.*

We find the facts in the present case distinguishable from **Lewis**. Pursuant to Rule 1004, other evidence of the contents of a video recording is admissible when, *inter alia*, the original is lost or destroyed "unless the proponent lost or destroyed [it] in bad faith[.]" Pa.R.E. 1004(1). In **Lewis**, the panel found the explanation for the unavailability of the original surveillance tape "unsatisfactory." **Lewis**, *supra*, 623 A.2d at 359. There was no evidence the tape was lost or destroyed; the security guard simply testified he was unable to locate the tape because the classification system was "imprecise." *Id.* Here, however, there is no dispute the surveillance video was unavailable at the time of trial. **See** N.T., 8/26/2015, at 36. Further, the trial court found Officer Fox attempted to secure a copy of the footage but "due to a malfunction somewhere in the process, the file had not, in fact, successfully downloaded or was for some other reason not retrievable." Trial Court Opinion, 4/18/16, at 4. The court opined: "[I]t is clear that the Commonwealth did not act in bad faith in failing to preserve the video surveillance recording." **Id.** at 4-5 (footnote omitted). We find no reason to disagree.

Nevertheless, even if we were to conclude the trial court erred in permitting Officer Fox's testimony regarding what she viewed on the video surveillance footage, we would find the error was harmless.

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hairston**, 84 A.3d 657, 671–672 (Pa. 2014) (quotation omitted), *cert. denied*, 135 S. Ct. 164 (U.S. 2014). "The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." **Commonwealth v. Poplawski**, 130 A.3d 697, 716 (Pa. 2015), *cert. denied,* 2016 WL 3032734 (U.S. Oct. 3, 2016).

In **Lewis**, the panel found the error in admitting the officer's testimony was not harmless because the testimony of the security guard, who witnessed the incident first-hand, did not definitively establish the defendant's culpability. **See Lewis**, **supra**, 623 A.2d at 359. Conversely, here, three disinterested eyewitnesses testified they observed Cook punch Ricci, while she was seated in her car, after which he immediately fled the scene. **See** N.T., 8/25/2015, at 49 (James Evanitsky); 83-84 (Craig Schermerhorn); N.T., 8/26/2015, at 47-48 (Dana Martin). Officer Fox's description of the events she observed on the surveillance video did not, in any way, deviate from the account provided by the eyewitnesses. **See** N.T.,

8/26/2015, at 21-23. Accordingly, we find any error on the part of the trial court in permitting Officer Fox to testify about her observations of the surveillance footage was cumulative of the properly admitted evidence, and harmless beyond a reasonable doubt. **See Dent**, **supra**, 837 A.2d at 590 (officer's testimony regarding his observations of defendant on surveillance video, which was not available at the time of trial, was "cumulative of [eyewitness's] properly admitted identification testimony.") Therefore, Cook is entitled to no relief on his first claim.

In his second issue, Cook challenges the weight of the evidence supporting his convictions. When a defendant challenges the weight of the evidence, he "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014). Our review of a weight claim is well-established:[8]

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of "a mere conflict in the testimony" and

---

[8] We note Cook properly preserved his weight of the evidence claim in his post-sentence motion. **See** Pa.R.Crim.P. 607(A)(1). Although the record does not reflect that the trial court specifically denied the motion, the court did address this issue in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, 4/18/2016, at 2-4.

must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*), *quoting* *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1196 (Pa. 2015) (citations omitted).

The trial court addressed Cook's weight of the evidence claim as follows:

Despite Ms. Ricci's testimony that [Cook] did not punch her, the Commonwealth called three eyewitnesses who testified that [Cook] did, in fact, assault Ms. Ricci. James Evanitsky testified that he was at the gas station getting gas and that, while there, he saw [Cook] punch Ms. Ricci in the face. Craig Schermerhorn testified that he had stopped at the gas station to get a snack for his son at the Sunoco Mini-Mart. He testified that he heard [Cook] yelling at Ms. Ricci and then saw him punch her in the face. Dana Martin testified that she arrived at the gas station with Mr. Schermerhorn and that she too saw [Cook] punch Ms. Ricci. In addition, Warminster Township Police Officer Renee Fox testified that she reviewed a video digital recording of the incident on the Sunoco station surveillance system. She testified that the recording showed [Cook] open the driver's side door of Ms. Ricci's car and punch her in the face. Photographs of the injury to Ms. Ricci's mouth, taken by police on the night of this incident, were admitted at trial. The Commonwealth also introduced statements made by Ms. Ricci at the scene. Although Ms. Ricci testified at trial that she was not assaulted, she admitted that she called 911 from her vehicle while she was still at the gas station and reported that "my

daughter's father punched my face, my mouth is split open." A recording of the 911 call was admitted into evidence. Mr. Ricci also admitted executing and signing a written statement wherein she wrote: "My boyfriend and I were fighting & he punched me in my mouth and caused my lip to split open when I tried pulling away from him in my car. He then got into his car & sped off." That written statement was also admitted into evidence.

As finders of fact, the jury was free to reject Ms. Ricci's in-court testimony and find [Cook] guilty based on the testimony of three impartial eyewitnesses, Officer Fox's description of the surveillance video and Ms. Ricci's statements to 911 and police, all of which were consistent in establishing that [Cook] reached into Ms. Ricci's vehicle and punched her in the face. The jury's verdict cannot be said to be "so contrary to the evidence that it shock's one's sense of justice." [**Commonwealth v.**] **Rakowski**, 987 A.2d [1215, 1219 (Pa. Super. 2010), *appeal denied*, 9 A.3d 629 (Pa. 2010)]. Therefore, the verdict was not against the weight of the evidence.

Trial Court Opinion, 4/18/2016, at 2-4 (footnotes omitted).

Cook's argument concerning the weight of the evidence focuses solely on Ricci's testimony that Cook did not punch her, but rather, she hit her face on the steering wheel when she reversed into a snow bank. **See** Cook's Brief at 16-17. He emphasizes that Ricci's trial testimony was consistent with her testimony at his preliminary hearing, and her version of the events in a letter she wrote to the magisterial district justice shortly before that hearing. **Id.** at 17. Accordingly, he contends "Ms. Ricci's consistent testimony shows that the jury's verdict was manifestly against the weight of the evidence." **Id.**

We conclude Cook has failed to establish the trial court abused its discretion in determining the verdict was not against the weight of the evidence. **See Rossner**, **supra**. We remind Cook that credibility

determinations are within the sole province of the fact finder. ***See id.*** Here, Ricci, despite her later recantations, told the police immediately following the incident that Cook punched her in the face. Her initial report was corroborated by three disinterested witnesses who saw the events unfold. Further, Ricci admitted during cross-examination that Cook had previously pled guilty to simple assault for pushing her into a wall in February of 2013. ***See*** N.T., 8/25/2015, at 181-185. We find no basis to disagree with the trial court's assessment that the jury's verdict, and its concomitant credibility determinations, did not shock the conscience.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2016