J-S44006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD ANTHONY BURKHART, JR. | : | |
| | : | |
| Appellant | : | No. 1916 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 26, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0007022-2018

BEFORE: BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 18, 2020**

Appellant, Donald Anthony Burkhart, Jr., appeals from the judgment of sentence of an aggregate term of 3-7 years' incarceration, imposed following his conviction for two counts of terroristic threats, 18 Pa.C.S. § 2706. Herein, Appellant challenges the trial court's admission of hearsay testimony, its imposition of separate sentences at each count, and the jurisdiction of the court to order conditions on Appellant's state parole. After careful review, we vacate Appellant's sentence for the misdemeanor-graded count of terroristic threats, and vacate any portion of the sentencing order purporting to set conditions on Appellant's state sentence or parole beyond the minimum and maximum terms of incarceration. We affirm Appellant's sentence with respect to the charge of terroristic threats graded as a felony.

The trial court summarized the relevant procedural history of this case and the facts adduced at Appellant's jury trial as follows:

On June 7, 2019, [Appellant] was found guilty of one count each of terroristic threats graded as a felony of the third degree and terroristic threats graded as a misdemeanor of the first degree. The convictions relate to multiple threats [Appellant] made to certain staff at UPMC [Pinnacle] Lititz hospital throughout the day on November 20, 2018. [Appellant] was at the hospital that day with his partner for the delivery of his child by means of a scheduled cesarean section. [Appellant] first manifested his anger to Dr. Jill Satorie and to his partner in the operating room when he claimed a male anesthesiologist saw his partner's "butt crack." After the delivery, [Appellant]'s agitated demeanor continued to escalate[,] with [Appellant] and his partner continually arguing with each other, [Appellant] discouraging an examination of his partner that was recommended, threatening Dr. Satorie that his partner might kick her and hurt her if the examination were performed, [Appellant's] asking Nurse Dana Mastromatteo when they could perform a paternity test on the baby, explaining that he wanted to know if the baby was a miracle or "something else" because [Appellant] had a vasectomy[,] and [Appellant's] becoming agitated [and] confrontational about wanting to bring his pit bull into the hospital room.

Later, when a decision was made to move the baby to the NICU due to respiratory issues and the atmosphere in the room, [Appellant] became particularly agitated and stated that he felt like the hospital was kidnapping the baby. When a clinical nurse manager, Eliza Zeidman, came to speak with [Appellant] about the transfer of the baby, [Appellant] pointedly told her that he had previously done time in jail and was not going to go back and then he asked if she understood what he was saying. Nurse Zeidman reported the threat to her boss who she believes reported it to security. [Appellant] was overheard on two other occasions making similar statements about his time in jail over his temper to a visitor and then a house supervisor.

[Appellant]'s anger seemed to peak over hospital staff refusing to permit his partner to smoke in the room or to go outside to smoke. He threatened Dr. Satorie that if anyone laid a hand on his partner when she attempted to go outside to smoke he would become angry, punch the wall in and hurt somebody. He informed both Dr. Satorie and Nurse Mastromatteo separately when discussing the smoking issue that he was the president of a motorcycle gang and that he would have that gang come to the hospital and make things ugly[,] like he did on a prior occasion at a hospital in Williamsport. In response to this final, specific threat, Dr. Satorie

and Nurse Mastromatteo contacted hospital administration[,] which resulted in security and police being contacted and responding. Due to the nature of the threats concerning the motorcycle gang, a decision was made to put the hospital into a lockdown situation.[1] [Appellant] was arrested and the hospital remained in lockdown from approximately 6:00 p.m. on November 20, 201[8,] until sometime between 6:30 a.m. and 8:00 a.m. on November 21, 201[8].

After completion of a [pre-sentence investigation report], [Appellant] was sentenced on August 26, 2019 to three to seven years of incarceration on the felony count of terroristic threats and a concurrent one to five years of incarceration on the misdemeanor count of terroristic threats. [Appellant] filed a post-sentence motion on September 4, 2019, which was denied by Order dated October 25, 2019. [Appellant] filed a [timely] notice of appeal on November 22, 2019.

Trial Court Opinion ("TCO"), 1/21/20, at 1-4 (footnotes omitted).

Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued its Rule 1925(a) opinion on January 21, 2020. Appellant now presents the following questions for our review:

I. Did the trial court err in admitting significant hearsay testimony regarding [Appellant's] alleged statements, under the guise of explaining Jeffrey Hatfield's course of conduct, where the testimony was extremely prejudicial, there was great risk that the jury would accept the testimony for its truth, and the jury was not given a limiting instruction regarding the use of said testimony?

II. Did the trial court err in imposing separate sentences for Count 3, terroristic threats, graded as a first-degree misdemeanor, and Count 1, terroristic threats, graded as a third-degree felony, where the two offenses charged a violation of 18 Pa.C.S. § 2706(a)(1), both charges addressed identical conduct, and the sole difference was the additional element resulting in felony three grading, as set forth in 18 Pa.C.S. § 2706(c), for causing the

_____

[1] The decision to lock down the hospital was made by the Security Supervisor at UPMC Pinnacle Lititz, Jeffrey Hatfield.

occupants of the building to be diverted from their normal or customary operations?

III. Did the trial court err in imposing a condition of no contact with the victims and in banning [Appellant] from UPMC Pinnacle [Lititz], where the court had no jurisdiction to impose such conditions, which are the province of Pennsylvania Probation and Parole?

Appellant's Brief at 6-7.

## **Hearsay**

In his first claim, Appellant alleges that the trial court erred when it admitted hearsay through the testimony of Jeffrey Hatfield. As explained by Appellant,

Jeffrey Hatfield, a security supervisor for UPMC Pinnacle for a region including UPMC Pinnacle's Lititz hospital, testified that at 4:26 p.m. he was notified of a potential security situation at the hospital. [N.T., 6/7/19-6/9/19, at] 230. As Mr. Hatfield began describing what he had been told about the situation, defense counsel objected that what he had been told was hearsay. [*Id.* at] 231. The [prosecutor] argued that what he had been told went to his course of conduct. [*Id.*] The court overruled the objection after a sidebar discussion. [*Id.*] Mr. Hatfield then testified that Dave Schmidt, the chief nursing officer for the Lititz hospital, told him that [Appellant] was harassing the staff and making threats. [*Id.* at] 231-[]32.

The [prosecutor] asked Mr. Hatfield what threat contributed to his decision to lock down, and defense counsel objected, arguing that the specific threat was hearsay. [*Id.* at] 234-[]35. Again, the [prosecutor] argued that the specific threat was relevant to Mr. Hatfield's course of conduct, and the court overruled the objection. [*Id.*]. Mr. Hatfield testified that he was advised that [Appellant] was supposedly a president of a motorcycle gang, and that he would have hundreds of motorcycles descend on the hospital to get his way, and that there had been a shooting in Chicago the day before and he would make it happen in Lititz. [*Id.* at] 235.

Appellant's Brief at 11-12.

Appellant argues that the trial court erred by overruling his objection because the details of the testimony were more prejudicial than probative, and that the error was not harmless because the jury was not specifically instructed as to the statement's limited, non-hearsay purpose. We conduct our analysis of Appellant's claim with the following in mind:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only where the court clearly abused that discretion. Proper judicial discretion conforms to the law and is based on facts and circumstances before the court. An abuse of discretion is not a mere error of judgment but, rather, involves partiality, prejudice, bias, ill-will, or manifest unreasonableness.
>
> Evidence is relevant if it has any tendency to make any fact that is of consequence to the case more or less probable. Pa.R.E. 401. All relevant evidence is admissible unless otherwise provided by law. Pa.R.E. 402. Although relevant, a trial court may exclude evidence if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Pa.R.E. 403.
>
> …
>
> Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Sometimes, out-of-court statements are offered not to prove the truth of the matter asserted but, for example, to explain the course of conduct undertaken by an investigating police officer. *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003). Such statements are not hearsay. *Id.*
>
> Even if a court does wrongly admit hearsay, this Court will not disturb a verdict on that basis alone if the admission constitutes harmless error. *Id.* at 582 n.2. Error is harmless if: (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so

insignificant by comparison that the error could not have contributed to the verdict. *Id.*

*Commonwealth v. Hardy*, 918 A.2d 766, 776-77 (Pa. Super. 2007) (some citations omitted).

Here, the trial court determined that the

record clearly establishes that this testimony was not offered for the truth of the matter asserted or to demonstrate that [Appellant] actually made the threats. The testimony was offered to show the information upon which the witness acted and to explain the witness's course of conduct and why he felt a lockdown was necessary at the facility.

Furthermore, the admission of such testimony did not cause [Appellant] any prejudice. Two separate witnesses had already testified that [Appellant] made the threat concerning the motorcycle gang. In fact, those witnesses went into greater detail, explaining that [Appellant] had supported his threat by telling them that he had caused it to happen on a prior occasion at another facility to get his way. Therefore, this portion of the testimony was merely cumulative. While it is true that the security supervisor went on to mention a shooting in Chicago, the way that portion of the testimony was offered also did not cause [Appellant] any prejudice. [P]rior to the testimony, it was explained, in the presence of the jury, that the witness was not testifying from personal knowledge or memory of what was said by [Appellant] and that such testimony was not being offered as to the truth of what happened. The actual victims of [Appellant]'s threats never stated that [Appellant] made threats concerning a shooting or any facility in Chicago. In fact, it could be argued that the security supervisor's testimony could have benefited [Appellant]. To obtain a conviction for a felony count of terroristic threats, the burden was on the Commonwealth to demonstrate that [Appellant]'s threats caused the occupants of the building to be diverted from their normal or customary operations. The security supervisor's statement that the decision to put the facility on lockdown was made because of threats concerning a motorcycle gang and threats of a shooting undermined the Commonwealth's case. The jury could have found that the lockdown was caused not by [Appellant]'s threats, but by miscommunication, misunderstanding or exaggeration.

TCO at 7-8.

We agree with the trial court that the at-issue testimony was relevant for a non-hearsay purpose—to explain Hatfield's course of conduct leading to the decision to lock down the hospital. The Commonwealth charged Appellant with terroristic threats graded as a felony. As such, the Commonwealth was required to prove that the terroristic threats caused "the occupants of the building, place of assembly or facility of public transportation to be diverted from their normal or customary operations[.]" 18 Pa.C.S. § 2706. Hatfield's testimony established a causal link between his decision to lock down the hospital and Appellant's threats.

Appellant argues that the prejudice stemming from this testimony nevertheless outweighed its probative value. He contends that the details conveyed by Hatfield—in particular, the specific threat to have hundreds of gang members target the hospital, and the reference to a shooting in Chicago—were unduly prejudicial, and that Hatfield could have explained his course of conduct by simply stating "that he called police and locked down the hospital because of threats attributed to" Appellant. Appellant's Brief at 24 (unnumbered page). However, we agree with the trial court that Hatfield's testimony was cumulative of the testimony of two witnesses who directly heard Hatfield's threats.

As to Appellant's assertion that the trial court failed to instruct the jury regarding the limited purpose of Hatfield's at-issue testimony, Appellant never requested a limiting instruction when the court issued its ruling. **See** N.T.,

6/7/19-6/9/19, at 234-35. Accordingly, Appellant has waived this aspect of his claim. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Thus, we ascertain no clear abuse of discretion by the trial court in admitting Hatfield's course-of-conduct testimony. For that reason, Appellant's first claim lacks merit.

### Merger

Next, Appellant asserts that the trial court erred when it issued separate, concurrent sentences for each count of terroristic threats. He argues that both charges "addressed identical conduct, and the sole difference was the additional element resulting in felony[-]three grading…." Appellant's Brief at 26 (unnumbered page). To the contrary, the trial court determined that Appellant "communicated several distinct threats to several distinct individuals on separate occasions throughout the day[,]" and that some "of his threats resulted in reports to hospital administration causing a diversion of regular activity for the hospital and some of them did not." TCO at 10. Thus, the trial court ruled that the offenses did not merge because they applied to separate criminal acts.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." *Commonwealth v. Johnson*, 874 A.2d 66, 70 (Pa. Super. 2005) (cleaned up).

> Whether these offenses merge turns on Section 9765 of our Sentencing Code, which provides:

**§ 9765. Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.[] § 9765.

"The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Baldwin**, … 985 A.2d 830, 833 ([Pa.] 2009). **Accord Commonwealth v. Wade**, 33 A.3d 108 (Pa. Super. 2011) (holding Section 9765 prohibits merger of sentences unless strict two-part test met).

**Commonwealth v. Martinez**, 153 A.3d 1025, 1030 (Pa. Super. 2016).

Here, it is undisputed that all of the elements of the misdemeanor-graded terroristic threats offense are included within the felony-graded offense. However, the record clearly reflects that Appellant made numerous threats on several occasions on the day in question. Nevertheless, Appellant argues that the separate charges in the amended criminal information filed by the Commonwealth "involved identical conduct, and were based on the same series of statements [Appellant] allegedly made over the course of the day." Appellant's Brief at 29 (unnumbered page). Appellant also challenges the trial court's reliance on **Commonwealth v. Petterson**, 49 A.3d 903 (Pa. Super. 2012).

Initially, the Commonwealth charged Appellant with two counts of the felony-level grading of terroristic threats at counts 1 and 2.[2] **See** Criminal Information, 12/28/18, at 1. That criminal information stated, *verbatim*, as follows:

> **COUNT 1** - TERRORISTIC THREATS - 18 Pa.C.S.A. 2706 (A1)- (FELONY 3)
>
> Person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another; TO WIT: ***Actor did state to UPMC hospital staff that, "For your sake I don't want what happened in Williamsport to happen here." Actor also stated to the staff, "I've spent five years in jail, I'm not doing that again. I can't control my temper and I will start punching holes in the wall." The staff said that they feared for their lives causing UPMC to go on lock down causing the hospital to divert from their normal operations. Said offense occurring 1500 Highlands Drive, Warwick Township, Lancaster, PA on November 20, 2018 at approximately 1645 hours.***
>
> **COUNT 2** -TERRORISTIC THREATS CAUSE SERIOUS PUBLIC INCONV. - 18 PS 2706 (A)(3)-(FELONY 3)
>
> Did communicate directly or indirectly, and caused serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience; TO WIT: ***Actor did state to UPMC hospital staff that, "For your sake I don't want what happened in Williamsport to happen here." Actor also stated to the staff, "I've spent five years in jail, I'm not doing that again. I can't control my temper and I will start punching holes in the wall." The staff said that they feared for their lives causing UPMC to go on lock down causing the hospital to divert from their normal operations. Said offense occurring 1500 Highlands Drive, Warwick Township, Lancaster, PA on November 20, 2018 at approximately 1645 hours.***

---

[2] The Commonwealth also charged Appellant with disorderly conduct at count 3.

- 10 -

*Id.* (emphasis in description added). The amended criminal information was identical to the initial criminal information but for the addition of count 4, which stated, *verbatim*:

**COUNT 4** - TERRORISTIC THREATS - 18 PS 2706(A1) - (MISDEMEANOR 1)

Did threaten to commit any crime of violence with the intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causeing such terror or inconvenience; TO WIT: ***Actor did state to UPMC hospital staff that, "For your sake I don't want what happened in Williamsport to happen here." Actor also stated to the staff, "I've spent five years in jail, I'm not doing that again. I can't control my temper and I will start punching holes in the wall." The staff said that they feared for their lives causing UPMC to go on lock down causing the hospital to divert from their normal operations. Said offense occurring 1500 Highlands Drive, Warwick Township, Lancaster, PA on November 20, 2018 at approximately 1645 hours.***

Amended Criminal Information, 5/17/19, at 2 (emphasis in description added).

It is clear from the emphasized passages above that the factual basis for all three terroristic threats offenses in the criminal information described identical conduct by Appellant. The jury acquitted Appellant at count 2, and convicted him at counts 1 and 4.[3] As noted above, the trial court determined that Appellant was convicted for separate criminal acts; however, there is no

---

[3] The jury was not charged with deciding Appellant's guilt for disorderly conduct. Thus, count 4 of the amended criminal information was presented to the jury as count 3. For ease of disposition, we will continue to refer to that charge as count 4. *See* Verdict Slip, 6/7/19, at 1.

indication in the jury's verdict slip that the conduct addressed by count 1 was distinct from that of count 4. *Id.* The Commonwealth argues that no relief is warranted, pointing to the fact the offense descriptions contained in the amended criminal information contained multiple, distinct threats directed at multiple victims. The Commonwealth, like the trial court, also relies on *Petterson*.

In *Petterson*, the defendant broke into the victim's house, found her in her bedroom, hit her in the head with a hammer, and then dragged the victim out of her room. *Petterson*, 49 A.3d at 906. Petterson "then stabbed her in excess of ten (10) times in the chest and back area. He then placed a plastic bag over her head and tried to suffocate her." *Id.* at 906–07. The Commonwealth ultimately charged Petterson with three counts of aggravated assault and three corresponding counts of simple assault. Convinced that this constituted one criminal episode, the magistrate dismissed two counts of aggravated assault and two counts of simple assault. *Id.* at 907-08. However, the Commonwealth refiled a criminal information,[4] charging three counts of each offense, for which Petterson was tried and convicted in the trial court. *Id.* at 908.

On appeal, Petterson alleged that all of the charged assaults were part of the same criminal episode. *Id.* at 911. The *Petterson* Court disagreed,

---

[4] While the *Petterson* Court determined that the Commonwealth's refiling of charges violated Pa.R.Crim.P. 544, the Court held that the violation did not warrant relief.

concluding that Petterson had "engaged in at least three separate, criminal acts, and that each individual act could independently fulfill the elements of aggravated assault." *Id.* at 912. The trial court had previously determined that the three simple assaults merged with the three aggravated assaults for sentencing purposes. *Id.* at 907. Notably, there was no discussion in **Petterson** of the manner in which the separate assaults were described in the criminal information.

We agree with Appellant that **Petterson** is not controlling here. The question in that case was whether the Commonwealth could pursue separate charges for each act in a series of assaults that occurred close in time. Here, the Commonwealth charged Appellant with two counts of terroristic threats for the entire series of threats issued by Appellant at count 1 and at count 2 under the felony grading, and for identical conduct at count 4. Count 4 thus appears on its face to have been a lesser-included offense to either count 1 or 2, not a distinct offense addressing distinct conduct, just as Petterson was charged separately with simple assault for each count of aggravated assault. Nothing in the amended criminal information or in the jury's verdict slip suggests that counts 1 and 4 addressed distinct conduct. Moreover, we have reviewed the trial court's jury charge, and we cannot find any directions suggesting that the jury could only consider separate acts for purposes of ascertaining guilt at each count. *See* N.T., 6/7/19-6/9/19, 418-23.

Consequently, we agree with Appellant that his misdemeanor-graded and felony-graded terroristic threats convictions should have merged for

sentencing purposes, as count 4 was a lesser-included offense of count 1, both were charged for identical conduct in the amended criminal information, and nothing in the record suggests that the jury considered separate conduct as the factual basis for each offense. The trial court therefore erred when it imposed a separate, albeit concurrent sentence for the misdemeanor-graded count of terroristic threats. Accordingly, we vacate Appellant's sentence for the count of terroristic threats that was graded as a misdemeanor. Because that sentence was concurrent to and shorter than the sentence imposed for the felony-graded count of terroristic threats, we need not remand for resentencing, as our disposition does not affect the sentencing scheme of the trial court.

### Conditions of Parole

In his final claim, Appellant argues that the trial court issued an illegal sentence by imposing conditions on his state-level sentence, specifically, by ordering him to have no contact with the victims, and banning him from UPMC Pinnacle "as part of the sentence." *See* N.T., 8/26/19, at 18. The trial court construes the conditions as only advisory and, therefore, permissible. *See* TCO at 9. The Commonwealth adopts the position of the trial court, and contends that Appellant is not entitled to any form of relief. *See* Commonwealth's Brief at 20. We note that the conditions were not memorialized in a written sentencing order. However, those conditions were presented by the trial court in the recommendation section of its DC-300B sentencing form. *See* Form DC-300B, 8/27/19, at 2.

- 14 -

An issue concerning "the statutory authority for the imposition of a condition of sentence … is a challenge to the legality of the sentence. Challenges to an illegal sentence cannot be waived and may be reviewed *sua sponte* by this Court." ***Commonwealth v. Mears***, 972 A.2d 1210, 1211 (Pa. Super. 2009) (footnote omitted).

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Id.*** (quoting ***Commonwealth v. Leverette***, 911 A.2d 998, 1001–02 (Pa. Super. 2006)).

When a defendant is sentenced "to a maximum term of incarceration of two or more years," his or her "parole would be under the exclusive supervision of the Pennsylvania Board of Probation and Parole ("PBPP") and not the Court of Common Pleas." ***Id.*** at 1212. "Therefore, any condition the sentencing court purported to impose on" the defendant's "state parole is advisory only." ***Id.***

Here, the trial court and the Commonwealth both essentially concede that the court was not permitted to set conditions on Appellant's state sentence beyond the minimum and maximum terms of incarceration. Consistent with this concession, the DC-300B form filed by the court sets forth the at-issue conditions merely as recommendations. However, it does appear from the sentencing hearing that the trial court ordered the conditions as part

of Appellant's sentence. Thus, out of an abundance of caution, we vacate any portion of the sentencing order that can be construed as setting mandatory conditions on Appellant's sentence or parole beyond the minimum and maximum terms of incarceration. Again, no remand is necessary because this does not affect the sentencing scheme of the trial court, which admits that it only intended to recommend the conditions to the PBPP.

Judgment of sentence **affirmed** in part, **vacated** in part. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2020