J-S21019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DIJUAN SANDERS | : | |
| | : | |
| Appellant | : | No. 252 EDA 2021 |

Appeal from the Judgment of Sentence Entered December 21, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001576-2020

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    Filed: September 30, 2021

Appellant, Dijuan Sanders, appeals from the judgment of sentence entered on December 21, 2020, following his jury trial convictions for terroristic threats, simple assault, and unlawful dissemination of intimate image.[1]  On this direct appeal, Appellant's court-appointed counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw. Moreover, after independently reviewing the record, we conclude that the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(1), and 3131(a), respectively.

instant appeal is wholly frivolous. We, therefore, grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

We briefly summarize the facts of this case as follows. On May 25, 2020, the victim and Appellant engaged in a domestic dispute over the parties' 10-month-old child. Appellant struck the victim numerous times, bit her, and threatened to kill her if she spoke with police. The victim ultimately took her child, fled the home the parties shared, and went to a family member's house where she called the police. At police request, the victim took photographs of her injuries, which included bruises and bite marks. Later, the victim discovered that, without her consent, Appellant posted a video to Facebook of the parties having sex.

On November 5, 2020, following a two-day trial, a jury convicted Appellant of the aforementioned crimes. On December 21, 2020, the trial court sentenced Appellant to concurrent terms of eight to 23 months of incarceration for the simple assault and terroristic threats convictions, plus a consecutive term of two years of probation for unlawful dissemination of intimate image. Appellant did not file post-sentence motions. This timely appeal resulted.[2]

_____

[2] Counsel for Appellant filed a notice of appeal on January 20, 2021. On January 21, 2021, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. On February 10, 2021, counsel for Appellant filed a statement of intent to file an **Anders**' brief pursuant to Pa.R.A.P. 1925(c)(4). On February 17, 2021, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), stating that because there were no issues for it to address, it was transmitting the record for this Court to examine any potential claims pursuant to **Anders**.

Before reviewing the merits of this appeal, this Court must first determine whether appointed counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361; *see also Commonwealth v. Smith*, 700 A.2d 1301, 1304 (Pa. Super. 1997) ("[C]ounsel seeking to withdraw under *Anders* is required to flag any issues that the defendant wishes to raise, as well as any other claims necessary to the effective appellate presentation of those issues."). Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5; **see also Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the **Anders** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. ... [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

Here, counsel complied with all of the above procedural obligations. Furthermore, Appellant has not responded to the petition to withdraw or **Anders**' brief. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. In his **Anders**' brief, counsel flags the following issues[3] Appellant wishes to raise:

    I.    Whether Appellant's convictions were against the weight and sufficiency of the evidence?

---

[3] We have paraphrased the issues presented.

- 4 -

II.     Whether the trial court abused its discretion at sentencing?

III.    Whether two evidentiary rulings were erroneous and require a new trial?

*Anders*' Brief at 10-18.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [fact-finder] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011).

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another[.]"  18 Pa.C.S.A. § 2706(a)(1).  "[A] person is guilty of [simple] assault if he [] attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]"  18 Pa.C.S.A.

§ 2701(a)(1). "[A] person commits the offense of unlawful dissemination of intimate image if, with intent to harass, annoy or alarm a current or former sexual or intimate partner, the person disseminates a visual depiction of the current or former sexual or intimate partner in a state of nudity or engaged in sexual conduct." 18 Pa.C.S.A § 3131(a).

Our review of the record reveals the following. On the day in question, when the parties were fighting about their crying baby, Appellant told the victim that "if [she said] something else, [he was] gonna punch [her] in [her] fucking face." N.T., 11/4/2020, at 22-23. When the victim responded, Appellant punched her in her right eye. *Id.* at 24. Appellant then slapped the victim four times across the face with his open hand. *Id.* at 25-26. Appellant "started punching [the victim] on [her] side and on [her] legs." *Id.* at 27. Appellant dragged the victim through the hallway. *Id.* at 30. When the victim said she would call the police, Appellant called the police himself, turned out the lights in the house when police arrived, and told the victim "that if [she] tried to get those cops, that he would kill [the victim], [her] son, and [the victim's] grandmother." *Id.* at 37-39. The victim testified that she was scared and that she believed Appellant. *Id.* at 40. Appellant demanded that the victim hand their baby over to him. *Id.* at 42. The victim stated that she would die before she gave Appellant their son and Appellant responded, "[W]ell, bitch, get ready to die." *Id.* When the victim tried to kick Appellant, he got on top of her, bit her left shoulder, and struck her in the back of the head multiple times. *Id.* at 43-44. Appellant went to answer his cellular

- 6 -

telephone in another room and the victim took their baby and drove to a family member's house. *Id.* at 47-49. The victim called the police. *Id.* at 50. The police told the victim to photograph her alleged injuries. *Id.* The victim's family member took photographs of the victim's shoulder, legs, and arms. *Id.* at 50-51. The victim reported the incident the next day in person at the police station and gave a written statement. *Id.* at 51-52. The police took additional photographs of the victim's injuries. *Id.* at 52. All of the photographs were admitted into evidence and shown to the jury. *Id.* at 52-59. Additionally, when the victim refused to answer Appellant's telephone calls after the incident, Appellant sent the victim a text message that said, "You can answer the phone or I can go live and let the world see what kind of slut you are[.]" *Id.* at 63. Sometime later, Appellant posted a video to his Facebook account of him having sex with the victim. *Id.* at 66. The victim did not give Appellant permission to post that video on-line. *Id.* Portions of the video were entered into evidence and shown to the jury. *Id.* The family member whom the victim stayed with after the incident also testified, confirmed the injuries the victim sustained, and verified the photographs she took. N.T., 11/5/2020, at 66-70. The family member testified that when the victim first arrived on the evening in question, she was shaking, crying, could not talk, and was not wearing shoes. *Id.* at 63-64. The victim called 911 and a police officer called her back. The victim started talking, but then began crying uncontrollably and was breathing heavily, so she handed the telephone to the family member who spoke to police. *Id.* at 70. The family member relayed to the police that

the victim said that "there was an altercation." *Id.* at 72. The police officer who took photographs of the victim confirmed her injuries and identified the Facebook video at trial. *Id.* at 124-133. Appellant testified on his own behalf, admitted to posting the video on Facebook, and stated that he was "trying to hurt [the victim] the way she was hurting" him. *Id.* at 175. Appellant denied striking or threatening the victim.

Based upon the foregoing and viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, we conclude that there was sufficient evidence to sustain Appellant's convictions. Here, Appellant directly communicated threats to commit violent crimes against the victim with the intent to terrorize her. More specifically, Appellant threatened to assault the victim, told her that he would kill her if she contacted police, and further stated that she should prepare to die. As such, the Commonwealth presented sufficient evidence to support Appellant's conviction for terroristic threats. Appellant also caused bodily injury to the victim, which included bruises to her face and body and a bite to her shoulder. Photographic evidence and testimony from several witnesses confirmed the victim's injuries. As such, there was sufficient evidence of simple assault. Finally, Appellant admitted to posting an on-line video of himself engaging in sexual conduct with the victim, an intimate partner, in order to harass, alarm, or annoy her. Hence, Appellant's conviction for dissemination of intimate image was proper. Accordingly, Appellant's challenge to the sufficiency of the evidence supporting his convictions is frivolous.

We turn now to Appellant's contention that the evidence was against the weight of the evidence presented at trial. Initially, we note that counsel concedes that a challenge to the weight of the evidence would be frivolous because Appellant did not preserve a weight claim pursuant to Pennsylvania Rule of Criminal Procedure 607(A). *See Anders*' Brief at 10. Nonetheless, *Anders* requires this Court to consider issues otherwise waived and assess whether they, too, are frivolous. *Commonwealth v. Lilley*, 978 A.2d 995, 998 (Pa. Super. 2009) (citation omitted). Our standard of review of a weight of the evidence claim is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Bohlen*, 236 A.3d 1123 (Pa. Super. 2020) (internal citations omitted).

Here, the jury was free to believe all, part, or none of the evidence presented and to determine the credibility of the witnesses. We may not

substitute our judgment for the jury's determination. Based upon our review of the record and our analysis above pertaining to the sufficiency of the evidence, Appellant's convictions do not shock one's sense of justice and were not against the weight of the evidence. Accordingly, Appellant's weight of the evidence claim is also frivolous.

With regard to Appellant's sentencing claim, we initially note that counsel states that Appellant did not file post-sentence motions and did not preserve a challenge to the discretionary aspects of sentencing. Likewise, the **Anders** brief fails to set forth a separate section setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence as required by Pa.R.A.P. 2119(f). As previously mentioned, however, **Anders** requires this Court to examine issues otherwise waived and assess the merits of such claims. **Lilley**, **supra** (addressing discretionary sentencing claims in an **Anders**' brief despite a defective Rule 2119(f) statement).

Our standard of review is as follows:

An appellate court will not disturb the sentencing court's judgment absent a manifest abuse of discretion.

In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. To demonstrate that the sentencing court abused its discretion, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. As long as the trial court's reasons demonstrate that it weighed the [s]entencing [g]uidelines with the

facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed.

***Commonwealth v. Morgan***, 2021 WL 2934137 (Pa. Super. 2021) (internal citations and quotations omitted).

Furthermore, this Court has determined:

There is no absolute right to appeal when challenging the discretionary aspect of a sentence. Rather, an appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code.

A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process.

***Commonwealth v. Dodge***, 2013 PA Super 253, 77 A.3d 1263, 1268–69 (2013) (internal citations, quotations, and footnote omitted).

Additionally, we have stated:

To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

**In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable.** Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 1270 (internal citations, quotations, and footnote omitted; emphasis added); *see also Commonwealth v. Moury*, 992 A.2d 162, 171–172 (Pa. Super. 2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

Here, the trial court sentenced Appellant to concurrent terms of eight to 23 months of incarceration for his simple assault and terroristic threats convictions, plus a consecutive term of two years of probation for unlawful dissemination of intimate image. There is no dispute that none of Appellant's sentences exceeded the statutory maximum for each separate offense. *Anders*' Brief at 15. Each individual sentence was also within the standard guideline range. *Id.* Furthermore, the trial court's decision to sentence Appellant to a consecutive term of probation for dissemination of intimate image does not raise the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case. Appellant's bald claim that his aggregate sentence was excessive does not forward a plausible argument that his guideline sentences were clearly unreasonable. Hence, Appellant has not raised a substantial question for our review. Therefore, Appellant's sentencing claim is frivolous.

Finally, counsel for Appellant points to two potentially erroneous evidentiary claims. Our standard of review is well-settled:

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. An evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

*Commonwealth v. Manivannan*, 186 A.3d 472, 479–480 (Pa. Super. 2018) (internal citations, quotations, and brackets omitted).

First, Appellant challenges the testimony given by the victim's family member wherein she told the police that the victim said there had been an altercation. *Anders*' Brief at 16. Counsel suggests that "[i]t could be argued that this testimony was double hearsay without a valid exception, and should have been excluded" from trial. *Id.* Appellant asserts that it was error to allow testimony from the victim's family member who interceded and spoke with the police when the victim was crying and breathing heavily. He claims that when the family member told police that the victim said there had been an altercation with Appellant, it constituted "double hearsay." *Id.*

Our Supreme Court has stated:

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. An out-of-court declaration containing another out-of-court declaration is double hearsay. In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently

- 13 -

established. This requirement is satisfied when each statement comes within an exception to the hearsay rule.

***Commonwealth v. Laich***, 777 A.2d 1057, 1060 (Pa. 2001) (internal citations and quotations omitted).

Here, the statements the victim made to her family member and the statements the family member made to the investigating police officer were clearly made out of court. As such, we will examine each of the statements, in turn, to determine admissibility. First, as to the statements that the victim made to her family member, for the reasons that follow, we conclude that the statements qualified under the excited utterance exception to the rule against hearsay. This Court has previously determined:

> Rule 803(2) of the Pennsylvania Rules of Evidence permits the admission of an excited utterance as an exception to the general rule that hearsay evidence is inadmissible. The Rule defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event." […T]his Court has held that for a statement to be considered an excited utterance, it must be made spontaneously and without opportunity for reflection:
>
>> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that the declarant had witnessed an event sufficiently startling and so close in point of time as to render her reflective though processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

> [...T]his Court [has] further held that there is no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance, but rather that fact-specific determination is to be made on a case-by-case basis.
>
> Additionally, in assessing a statement offered as an excited utterance, the court must consider, among other things whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so. Our Courts have not established a bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement. Rather, the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. It is the spontaneity of an excited utterance that is the source of reliability and the touchstone of admissibility.

*Commonwealth v. Gray*, 867 A.2d 560, 570–571 (Pa. 2005) (internal citations, quotations, original brackets, and original ellipses omitted).

In this case, the excited utterance exception to hearsay was satisfied. There was a startling event. The victim participated in that event. The victim's subsequent statements to her family member related to the event. The statements were made almost immediately after the event while the stress of the event persisted and the nervous excitement continued to dominate while the victim's reflective processes remained in obeyance. Accordingly, we conclude that the statements the victim made to her family member qualified as an excited utterance and an exception to the rule against hearsay.

Next, with regard to the statements the family member made to the police officer, this Court has previously determined:

"hearsay is an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." *Commonwealth v. Mosley*, 114 A.3d 1072, 1084 (Pa. Super. 2015); *see also* Pa.R.E. 801, 802. Such exceptions include statements that would establish motive, the existence of a plan, or would similarly "complete the story." *See Commonwealth v. Mayhue*, 639 A.2d 421, 434 (Pa. 1994); *see also Commonwealth v. Levanduski*, 907 A.2d 3, 13 (Pa. Super. 2006).

Specifically, "[s]ometimes, out-of-court statements are offered not to prove the truth of the matter asserted but, for example, to explain the course of conduct undertaken by an investigating police officer. Such statements are not hearsay." *Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. 2007) (citation omitted); *accord Commonwealth v. Chmiel*, 889 A.2d 501, 532–533 (Pa. 2005); *Commonwealth v. Dent*, 837 A.2d 571, 579 (Pa. Super. 2003) ("It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted." (citations omitted)).

*Manivannan*, 186 A.3d at 482–483. Here, the statements from the family member to the police officer were not offered to prove the truth of the matter asserted or that "an altercation" occurred. Instead, they were offered to explain the course of police conduct in investigating the matter and to show the information upon which the officer acted. As such, we do not deem the statements at issue constituted hearsay. Further, assuming there was trial court error in admitting the evidence, this Court is convinced, beyond a reasonable doubt that the alleged error could not have contributed to the verdict or was harmful or prejudicial to Appellant. Upon review of the record, Appellant himself described the event as "an altercation" when he testified on

his own behalf. *See* N.T., 11/5/2020, at 173. The investigating officer also testified that the incident "was a domestic assault." *Id.* at 124. Moreover, the victim testified at length about the night in question and the jury was permitted to hear the recorded 911 call with the victim and the police dispatcher. In light of this other cumulative, properly admitted evidence, we deem Appellant's first allegation of evidentiary error without merit, but otherwise harmless.

Next, Appellant argues that it was trial court error to permit a police officer "to testify as to whether [the victim's] testimony at trial was coherent or hysterical." *Anders*' Brief at 17. Counsel for Appellant contends that "[i]t could be argued that this testimony should have been excluded, based on the strong and well litigated principle that witnesses are not allowed to opine on another witness's testimony." *Id.* (citations omitted). Upon review of the record, we discern no abuse of discretion. The Commonwealth's line of questioning was in fair response to defense questioning about the victim's demeanor when interacting with the police after the night in question. At trial, defense counsel questioned a police officer about why the victim was calm and coherent when she initially called 911, but then became hysterical when she spoke with that officer later in a separate telephone call. *See* N.T., 11/5/2020, at 90-109. More specifically, the police officer testified that he "wasn't really able to gather what had happened with [the victim] because of her hysterical state, [so he] ascertained from [the victim's family member] whether or not she was safe there." *Id.* at 91. The police officer agreed with defense counsel

- 17 -

that the 911 call made earlier by the victim was "coherent," but the victim was "hysterical" a short time later when the officer called her back. *Id.* at 97-98. The Commonwealth later asked the officer to clarify "coherent" from "hysterical" in relation to the victim's demeanor on the witness stand at trial. *Id.* at 108-109. More specifically, the following exchange occurred:

| | |
|---|---|
| [The Commonwealth]: | [Officer, y]ou were in court for the past two days. How would you describe [the victim's] demeanor in her testimony for yesterday afternoon and most of this morning? |
| [Officer]: | Well, I saw her answering questions coherently, then I also saw her crying as she was being questioned. |
| [The Commonwealth]: | When she was crying, was that similar in nature in any way to how she sounded on that phone call? |
| [Officer]: | It was similar, but she was a little worse when I spoke to her. |
| [The Commonwealth]: | Little worse when what? |
| [Officer]: | When I spoke to her. |

*Id.* at 109.

As the foregoing testimony reveals, the Commonwealth did not question the officer about the victim's credibility. Instead, the officer was asked to clarify his description of the victim's demeanor immediately following the alleged crimes as compared to her conduct at trial. We discern no abuse of discretion in permitting the testimony. Moreover, the jury was able to assess the victim's credibility at trial. Lastly, in light of the cumulative evidence

presented and as set forth at length above, including the testimony of the victim, her family member, and the police, the recorded telephone conversation between the victim and 911 dispatcher, and the photographs of the victim's injuries, we deem this allegation of evidentiary error harmless because it could not have contributed to the verdict.

Finally, after independent review of the record, we discern no additional, non-frivolous issues overlooked by counsel. *See Commonwealth v. Schmidt*, 165 A.3d 1002, 1006 (Pa. Super. 2017) ("After determining that counsel has satisfied the[] technical requirements of *Anders* and *Santiago*, this Court must then conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.") (citation and internal quotations omitted). Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/21